MARTHA E. JONES, administratrix, *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk. December 11, 1902. — September 1, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, & HAMMOND, JJ.

*Negligence. Railroad.*

In an action under the employers' liability act against a railroad company for the death of the plaintiff's intestate, an engineer on an express freight train, killed by his train running into a construction train, it appeared, that the train under charge of the plaintiff's intestate consisted of a heavy locomotive and forty-four cars, some of them heavily loaded, that it was on a heavy down grade where it was not customary to use steam under similar circumstances but that the intestate was using steam to make up time and was running at a rate of from eighteen to twenty-five miles an hour, that the rules required him to be "vigilant and cautious, not trusting alone to signals or rules for safety", that the stationary signal nearest to the construction train was seventeen hundred and fifty feet from it, that a flagman went back from the construction train upwards of two thousand feet and beyond this signal and could have been seen for a considerable distance, that the intestate tried to stop his train but, although he checked its speed somewhat, it ran past the flagman to the place of the collision where it struck the construction train with such force as to throw the locomotive of the freight train from the track and wreck seventeen cars. *Held,* that, assuming that the flagman was a person having charge of a signal, under St. 1887, c. 270, § 1, cl. 3, and that he was negligent in not going back as far as required by the rules, and also assuming that there was negligence on the part of the defendant in omitting to warn the plaintiff's intestate of the presence of the construction train, there was no evidence that the plaintiff's intestate was in the exercise of due care.

TORT, under St. 1887, c. 270, and acts in amendment thereof and in addition thereto, by the administratrix of the estate of Roger P. S. Jones, for the death of the plaintiff's intestate. Writ dated August 3, 1899.

In the Superior Court the case was tried before *Richardson,* J., who at the conclusion of the plaintiff's evidence, at the request of the defendant, ruled that the plaintiff was not entitled to recover, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*J. Bennett,* (*D. W. Reid* with him,) for the plaintiff.

*C. F. Choate, Jr.,* for the defendant.

MORTON, J. The plaintiff's husband was an engineer in the service of the defendant company, and was killed in a collision between his train, which was an express freight bound to Boston, and a construction train near what is called the Dedham road from two to two and a half miles towards Boston from Canton Junction. This is an action by the plaintiff as administratrix of her husband's estate to recover damages under St. 1887, c. 270, and acts in amendment thereof, for his injuries and death. The declaration is in five counts, but the grounds of recovery chiefly relied on, are, that there was evidence tending to show negligence on the part of the defendant and of the servants in charge of the construction train and of the locomotive attached to it, in suffering the train and the locomotive to be where they were at the time of the accident, without warning or notifying the plaintiff's intestate of its presence, and also that there was evidence tending to show negligence on the part of one Morse, who had charge of signal flags and torpedoes, in not going back from the construction train as far as required by the rules to warn approaching trains of the danger. During the trial some evidence was offered by the plaintiff which was excluded, and the plaintiff excepted. At the conclusion of the plaintiff's evidence the judge directed a verdict for the defendant. The case is here on exceptions by the plaintiff to the exclusion of the evidence that was offered, and to the ruling directing a verdict for the defendant.

The exceptions to the exclusion of evidence have not been argued and we therefore treat them as waived. We think that the ruling directing a verdict for the defendant was right and that the evidence showed that the plaintiff was not in the exercise of due care.

The train to which the locomotive of the deceased was attached consisted of forty-four loaded cars and a caboose. Some of the cars at least, if not all, were heavily loaded. The locomotive was also a heavy locomotive. The grade from Canton Junction to the place of collision was a heavy, down grade, and the evidence showed that it was not customary to use steam going down it, unless the train had stopped at Canton Junction which the train of the deceased did not do on the morning of the accident. The train was three hours late and there was un-

contradicted testimony tending to show that the plaintiff's intestate was making up time, and was using steam as he ran down the grade towards the place of the accident. The construction train was on a curve, and the testimony left it somewhat uncertain how far it could be seen in the direction of Canton Junction. But it seems clear that it could have been seen about a third of a mile at least, though that is not very material. Between the place of the accident and Canton Junction were two banjo signals as they are termed. The signals were operated by electricity from batteries placed along the roadbed. If within the sphere of their operation the track was unobstructed the signals showed white. If it was obstructed they showed red. The nearest of these signals to the place of collision was about seventeen hundred and fifty feet from it and the other was about a mile still further towards Canton Junction. These signals were intended to convey warnings of obstructions only within the sphere of the operation of each signal. Neither signal was intended to warn approaching trains of obstructions or dangers within the sphere of operation of the other signal. The fact that the signal nearest Canton Junction was, as the testimony tended to show, at safety, did not show whether the track was or was not obstructed beyond the other signal. The testimony tended to show that the flagman went back upwards of two thousand feet from the construction train and beyond the signal nearest to the place of collision. Just how far he could or ought to have been seen by the plaintiff's intestate is not clear, but it is manifest that he could or ought to have been seen for a considerable distance. The testimony tended to show that the plaintiff's intestate endeavored to stop his train, and did check the speed somewhat, but the train was going at such a rate of speed that he was unable to stop it, and it ran the whole distance between the flagman and the place of the accident and collided with the construction train with such force as to throw the locomotive of the freight train from the track and to wreck seventeen cars so badly that they had to be burned where they were in order to clear the track. The testimony tended to show that the plaintiff's intestate was running from eighteen to twenty-five miles an hour. There is nothing to show that he was required to make up time or to run at the rate of speed at which he was

running. The rules required him to "be vigilant and cautious, not trusting alone to signals or rules for safety." Assuming, without deciding, that the flagman was a person in charge or control of a signal within the meaning of the statute, and that he was negligent in not going back as far as required by the rules, and also assuming, without deciding, that there was negligence on the part of the defendant in omitting to warn the plaintiff's intestate of the presence of the construction train, we think that under the circumstances his train was going at an excessive speed and that the accident would or might have been avoided by the exercise of due care on his part, and therefore that the plaintiff is not entitled to recover.

*Exceptions overruled.*