DALLAS COAL COMPANY v. ROTENBERRY.

Opinion delivered February 3, 1908.

1.  MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE.—Violation by a servant of a rule promulgated by his master for his protection is an act of negligence *per se*, and, when it contributes to his injury, precludes a recovery by him from the master, though there is some concurring act of negligence on the master's part. (Page 240.)

2.  SAME—VIOLATION OF MASTER'S RULE NOT EXCUSED WHEN.—Where a master's rules required that servants, before going into an elevator shaft, should notify the engineer in charge of the elevators, a violation of this rule by plaintiff was not excusable upon the ground that he was informed that the engineer was temporarily absent, and that he assumed that the engineer would not return while he was at work in the shaft, or if the engineer did return that he would not move the elevators without giving plaintiff notice. (Page 240.)

Appeal from Sebastian Circuit Court; *Daniel Hon*, Judge; reversed.

*T. B. Pryor*, for appellant; *T. W. M. Boone*, of counsel.

The evidence is uncontroverted that the "sump" is the most dangerous place in the mine; that before entering the sump for any purpose it is the duty of the miner to notify the engineer of his intention to do so, and plaintiff himself says that no one on top knew or was notified of his intention to enter the sump, that he had worked in mines for eighteen or twenty years, and that he in common with all other miners knew the danger. His own negligence precludes a recovery. 60 Ark. 582; 1 Labatt, M. & S. 139; *Id.* 840; 83 Ark. 567.

*Holland & Holland*, for appellee.

Appellee had a right to expect that the back signal would be given before the cage was lowered. It was a negligent act on the part of the pit-boss, Finley, to lower the cage in the absence of the engineer without first giving this signal. 65 Ark. 138. The question of contributory negligence was one for the jury. 78 Ark. 100; 67 Ark. 277; 80 Ark. 79; 6 L. R. A. (N. S.) 554. The fact that the injury was due to the master's breach of a rule which he himself had promulgated for the protection of the servants is evidence from which negligence may be inferred. 1 Labatt, M. & S. 31; 92 Va. 554. "Where the

master is required to perform a specific duty to his servants, he is liable for negligence in the discharge of such duties, no matter who may be the agent through whom he acts." 39 Ark. 27; *Id.* 17; 44 Ark. 524; 61 Ark. 306; 54 Ark. 289. If, by the exercise of ordinary care on the part of the master, the consequence of the servant's negligence might have been avoided, he may recover, notwithstanding his contributory negligence. 61 Ark. 350. Where there is no reason to apprehend danger, or where his duties require his whole attention, he need not look out for danger. 37 S. W. 475; 91 Am. St. Rep. 798; 33 Am. St. Rep. 908. See also 63 S. W. 164; 55 S. W. 699; 53 Fed. 843; 87 Fed. 534. Knowledge which will defeat a servant's right of recovery must be of the specific danger itself, and not of danger in general; and that is a question for the jury. 53 Ark. 128; 42 Wis. 583; 77 Ark. 376.

McCulloch, J. This is an action instituted by appellee to recover damages for personal injuries received while at work for appellant in a coal mine. When the injuries were received by appellee, he was at work in the bottom of the shaft engaged in laying a switch track. He was in a pit beneath the elevator cages, and was crushed and injured by one of the cages being lowered on him.

There were two of these cages, side by side, which were operated by an engineer at the top of the shaft, so that as one of the cages arose the other descended. The cages are used in hoisting coal, as it is mined below, to the surface, and cars filled with coal are run into the cages. When the mine is in operation, there is a man, called the "cager," at the bottom of the shaft who gives a signal by electric bell to the engineer above when a cage loaded with coal is ready to be hoisted. Ordinarily, the engineer puts the cage in motion upon this signal; but when he does not move the cage promptly, it is the rule and custom for him to signal down through a speaking tube to the cager, before he starts the cage, that he is about to do so.

The pit beneath the cages, which is called by the miners the "sump" of the mine, is regarded as an extremely dangerous place, because of the fact that the cages are suspended above it, and there is a rule of the company, made for the protection of the workmen in the mine, that no one shall go into the sump for

any purpose without notifying the engineer of that fact. The purpose of this rule is obviously that the engineer be informed of the presence of any one in the sump, so that he may not move the cages.

The rules provide that the engineer, after he has been notified that some one is in the sump, must not move the cages, even on bell signal, lest the signal bell shall have been accidentally sounded by contact with the wire, but to await a message notifying him that everything is all right for the cages to be moved.

On the day the injury occurred the mine was not in operation, but appellee and three or four fellow-workmen were down in the shaft engaged in relaying a switch-track, and the engineer was on duty for the purpose of operating the cages when necessary. The track did not run across the space beneath the cages, but there was a piece of timber nailed across the space which it was necessary to remove in re-laying the track to the cages, and appellee went into the pit or sump for the purpose of knocking this piece of timber loose. At this time one of the cages rested at the bottom of the shaft loaded with a car of dirt which had to be removed, and one of the workmen gave the signal to the engineer to hoist the cage. In response to the signal, some one at the top, so appellee testified, called down through the shaft saying that the engineer had gone to the creek to fix the pump. Appellee then went into the sump, without notifying the engineer or any one else at the top of the shaft that he was about to do so, and proceeded with the work of knocking the timber loose, when shortly afterwards the cage resting at the bottom arose unobserved by him and the other cage descended upon him and injured him. Appellee was a miner of eighteen or twenty years' experience, and had been working in this mine about eighteen months at the time he sustained injury.

This is the state of facts presented by appellee upon which he seeks recovery of compensation for his injuries.

Testimony introduced by appellant shows that at the time of the accident the regular engineer was fixing the pump at a creek about one hundred and fifty yards from the top of the

shaft, and that another man who sometimes operated the engine in his absence was at work near the engine room. This man testified that he was ten or fifteen steps from the engine room, heard a signal to hoist the cage, and immediately went to the engine and set the cages in motion, in response to the signal.

The undisputed evidence establishes the fact that appellee went into the place of danger in violation of the rule provided for his protection. This was contributory negligence on his part, and precludes a recovery. The doctrine is now too well established to be seriously questioned that violation by an employee of a rule promulgated by his employer for his protection is an act of negligence *per se,* and, when it contributes to his own injury, precludes a recovery, notwithstanding there is some concurring act of negligence on the part of the employer, or his vice-principal. 1 Labatt, Master and Servant, § 365; Dresser on Employer's Liability, § 109.

"The duty of the servant to comply with the rules which the master has published for his guidance may be referred," says Mr. Labatt, "to the broad principle that the rules, if reasonable, may be assumed to indicate the methods of work which experience has shown to be calculated to furnish the best chance of safety, under the circumstances, both to the servant himself and to his fellow employees; and that a breach of those rules must, by consequence, charge him with that culpability which the law infers from the doing of a certain act in an unnecessarily dangerous manner."

There are some qualifications, though none applicable to the facts in this case, to the general doctrine that violation by an employee of rules promulgated for his protection constitutes negligence, but all the authorities agree with practical unanimity that when a rule made for the protection of employees and in force at the time is violated by an employee of that class, it is an act of negligence *per se;* and if such act contributed to the injury complained of, it will bar a recovery by the employee.

The undisputed evidence in this case calls for an application of this doctrine. Appellee was an experienced miner, and was advised of the existence of this rule made for his own protec-

tion and that of his fellow employees. He knew that the pit or space beneath the cages was the most dangerous place in the mine—so dangerous that a rule was established forbidding any workmen to go there under any circumstances without notifying the engineer of his presence in that place. He went in there, confessedly, without giving any notice to the engineer or to any one at the top of the shaft where the cages were operated, and became so absorbed in his work that the cage at the bottom only a few feet distant from him arose without his observing it and the other came down on him.

Counsel seek to escape the force of this rule by calling attention to the fact that at the time appellee went into the place of danger he was informed upon apparently reliable authority that the engineer was absent, and that he had the right to assume that the engineer would not return while he was at work there or that if the latter did return to his post he would not move the cages without giving notice. This contention is not sound. Appellee had no right to violate this rule during the temporary absence of the engineer. The rule forbade him going into the place at all without giving notice to the engineer of his intention to do so; and when he violated the rule, he did it at his peril and thereby assumed the risk of the danger.

It might be different if the cages were not being operated at all that day and the engineer had been off duty for the day or any other definite space of time. In that event it would not be said, as a matter of law, that he was guilty of negligence in going under the cages, but it would perhaps be a question for the determination of the jury whether it was in fact an act of negligence to go into the place. Where, however, the facts are, as is indisputably shown here, that the absence of the engineer was only temporary, and his return might have been expected at any moment, when the cages were being moved from time to time and were in readiness to be moved, appellee cannot escape the operation of the rule on account of the absence of the engineer. It was doubtless for just such an emergency as this that the rule was established, and its violation under those circumstances was plainly an act of contributory negligence.

Whether the act of the person who caused the cages to be

moved was that of appellee's fellow servant or of a vice principal, we need not determine, as appellee's own negligence precludes a recovery for the injury.

Reversed and remanded for a new trial.