MICHAEL FOLEY *vs.* BOSTON AND NORTHERN STREET RAILWAY COMPANY.

Suffolk.    January 13, 1908. — May 20, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence.    Street Railway.*

In an action by a motorman against a street railway company for injuries alleged to have been caused by a defective brake upon a car of the defendant which the plaintiff was operating, by reason of which the car ran into a car ahead of it on the same track which had stopped at a regular stopping place, it appeared that the plaintiff had been working as a spare motorman for about two weeks, having previously received instruction from employees of the defendant for twelve days, that when the plaintiff became a spare motorman he was given two books of rules made by the defendant for the guidance of its employees, the rules being preceded by a notice that the employees must not be ignorant of them, that all the rules pertaining to motormen in both books could be read deliberately in less than half an hour, that under the heading "Inexcusable accidents" there were explicit instructions as to avoiding rear end collisions, such as that which caused the injury to the plaintiff, and that if the plaintiff had followed these instructions the accident would not have happened. The plaintiff testified that he read some of the rules, but "did not have time to read all,"

and sought to excuse his ignorance of the rules on this ground. *Held,* that the defendant had done all that it reasonably could to charge the plaintiff with a knowledge of the rules and that there was abundant time for the plaintiff to have become familiar with them, that, as between the parties, the same duty of obedience existed as if the plaintiff in fact knew the rules, and that, as to his employer, a disobedience of the rules was want of due care.

In an action by a motorman against a street railway company for injuries alleged to have been caused by a defective brake upon a car of the defendant which the plaintiff was operating, by reason of which the car ran into a car ahead of it on the same track which had stopped at a regular stopping place, if it appears that the plaintiff, who, after receiving instructions from employees of the defendant, had been working as a spare motorman for about two weeks, noticed upon getting on the car that there was trouble with the brakes, that on his route an inspector of the defendant boarded his car and the plaintiff told him that the brake was not working right, that the inspector took the brake handle and attempted to operate it and at his first attempt was not able to stop the car any better than the plaintiff had been able to, but on a second attempt succeeded in stopping the car, and said that the brakes were not working right, but gave the plaintiff some directions about operating the brake and told him that it would work all right, that after the inspector left the car the brake continued to work in the same bad way that it had previously throughout the trip, that at the time of the accident the plaintiff had been running the car for about two hours and had gone over his entire route and more, that for more than a quarter of a mile he was immediately behind the car with which he came in collision, that he knew that his was a faster car than the one ahead and, as he followed, was throwing his power off and on and kept his car as near as he would have done if his brake had been in perfect order, that the car in front reduced its speed in the ordinary way at a regular stopping place, that the plaintiff then discovered that his brake was not stopping his car, that he did not attempt to reverse the power, although he knew that this was the most efficient way of bringing the car to a stop, and the collision occurred. *Held,* that the danger of collision was obvious to one with the knowledge which the plaintiff possessed; that the remark of the inspector did not justify the plaintiff in running his car as if nothing was the matter with it, after he had seen that even the inspector was not able to make the brake work well and that after the inspector left it continued to work as badly as before, that the plaintiff was not justified in surrendering his own intelligence and was bound to be alert to avoid danger, and that there was no evidence for the jury that the plaintiff was in the exercise of due care or that his injuries did not result from his own negligence.

TORT by a motorman, against the street railway company by which he was employed, for injuries incurred on the evening of August 23, 1903, by the collision of the car which the plaintiff was operating with a car of the Boston Elevated Railway Company which was ahead of it on the same track, alleged to have been caused by a defective brake on the car operated by the plaintiff, with four counts, of which the first and third, described in the opinion, only are material. Writ dated October 17, 1903.

In the Superior Court the case was tried before *Sanderson,* J. The facts which were shown by the evidence are stated in substance in the opinion. The judge refused to order a general verdict for the defendant or to make certain rulings which the defendant requested. He ordered a verdict for the defendant on the second and fourth counts, and submitted the case to the jury on the first and third counts.

The judge submitted to the jury the question, " Did an inspector in the employment of the defendant give the plaintiff on the day of the accident instructions as to the brake as testified to by the plaintiff?" The jury answered, " Yes."

The jury found for the plaintiff on the first and third counts in the sum of $1,600; and the defendant alleged exceptions.

The case was submitted on briefs.

*H. F. Hurlburt & D. E. Hall,* for the defendant.

*T. W. Coakley, D. H. Coakley & R. H. Sherman,* for the plaintiff.

RUGG, J. This is an action of tort brought to recover for personal injury sustained by the plaintiff while a motorman in the employ of the defendant. The car, which the plaintiff was driving, ran into another car ahead of it going in the same direction. The case was submitted to the jury upon the first and third counts of the plaintiff's declaration, the former being under R. L. c. 106, § 71, cl. 1, for a defect in the ways, works and machinery, and the latter at common law, for failure to furnish a safe car. The experience of the plaintiff as motorman was during twelve days while receiving instructions from employees of the defendant and (after an interval of two weeks) for not quite two weeks during which he was spare motorman for the defendant. The accident happened on Salem Street, in Malden, near the corner of Auburn Street. Salem Street runs from Malden Square to the place of the accident, a distance of about a quarter of a mile, and beyond. The plaintiff contended that the accident was due to a defective condition of the brakes on his car. It happened on the evening of a pleasant summer day, after he had been operating the car about two hours. The plaintiff testified in substance that immediately upon getting on the car he noticed that there was trouble with the brakes; that on his route an inspector of the defendant had boarded his car, and plaintiff told him that the brake was not working right;

the inspector took the brake handle and attempted to operate it, but was not able at the first attempt to stop the car any better than the plaintiff himself had been able to, but on a second attempt stopped it all right, and said that the brakes were not working right, and that there must be a flat wheel, but gave the plaintiff some directions about operating the brake, and told him it would work all right; and that after the inspector left the car the brake continued to work in the same bad way that it had previously, throughout the trip, and that he knew that, whether it was safe to run the car or not, depended upon the distance he kept, in which to stop the car; that he passed the car barn a considerable time after seeing the inspector, but did not stop there either to get another car or to report the condition of the one he was on, although he knew, as a matter of common sense, that if his car was not working properly, it was safe and prudent, when he came to the car barn, to speak to the foreman about it, and ask for another car, and that he knew that, if his car was working so that it was dangerous either to himself or passengers, it was his duty to hitch to another car and be drawn to the car barn; that he saw the car of the Boston Elevated Railway Company all the way from Malden Square, and that the street was straight and level to the point of accident; and that the elevated railway car was most of the time seventy-five to one hundred feet ahead of his car, and that he was going at the rate of about eight miles an hour; that the car ahead stopped near a white post at the corner of Auburn Street, and he tried to stop his car by means of the brake, which did not work, and the collision occurred; that he did not attempt to reverse his car, although he had been instructed that this was one of the means of stopping a car; and he described with accuracy the method and effect of reversing a car, and said that he knew in that way he could stop a car very quickly — somewhat quicker at least than by means of the brake; that he understood that it was his duty, when a car was ahead on the same track, to keep his own car under control; and that he followed behind the elevated car at the same rate of speed and with the same distance between as he would if his car had been in perfect condition, and that, if he had wanted to, he could have kept farther behind the elevated car, as that was solely in his discretion.

Certain rules of the defendant, from rule books like those given to the plaintiff when he became motorman, were put in evidence. The rules were made by the defendant for the guidance of its employees in the performance of its duty to safely transport the portion of the public who entrusted themselves to it as passengers, and under a sense of heavy responsibility. The plaintiff testified that he read some of the rules, but "did not have time to read all," and sought to excuse himself from knowing them on this ground. He had been working as spare motorman about two weeks after they were put in his possession. The rule books were two in number, measuring about three and one half by five and three fourths inches, one containing forty-one pages, and the other fifteen. All there is in both pertaining to motormen can be deliberately read in less than half an hour. The defendant in all its relations with its passengers is held to the exercise, through its motormen as well as its other servants, of the highest degree of care reasonably consistent with the transaction of its business. So far as its patrons were concerned, the defendant could not excuse itself from the performance of this duty by testimony of a motorman that under these circumstances he "did not have time to read" the rules. No reason is shown for the ignorance of the plaintiff respecting the rules. They were put into his hands for the purpose of enlightening him as to the highly important and responsible duties which, as motorman, he was required to perform with regard to passengers upon his own and other cars and all other persons who might be in the street as well as the property of the defendant in his charge. It was an implied condition of his contract of employment that he should study and apply in action these rules, and it was made an express injunction, by the notice contained upon the first page of the rule book, that he should not be ignorant of them. In view of the obligations assumed by his contract of service and his plain duty to know and act according to the rules and the period he had been working, there was abundant time for him to have become familiar with the rules. Failing to show any excuse for his ignorance, he is subjected to the same obligation and responsibility as if he actually knew them. The defendant had done all it could reasonably do to charge the plaintiff with knowledge of

the rules, and the same duty of obedience arose, as between the parties, as if the plaintiff in fact knew them.   A disobedience of them by the employee is want of due care as to the employer. *Stevens* v. *Boston Elevated Railway*, 184 Mass. 476.   It cannot be regarded as due care to trifle with opportunity for knowledge touching a subject so vitally affecting his duty and the life and limb of human beings.   A considerable portion of one suggestion in the books under the heading, " Inexcusable Accidents " is devoted to rear end collisions, such as that complained of by the plaintiff, and among other plain and forcible statements, it is said, " Take, for instance, a rear end collision.   How often can be found an excuse for such an accident?   Indeed, it is rank carelessness nine times out of ten?   Day or night the car ahead of you may be seen.   If you are the motorman following, you know it is there, and it is your duty to keep as far from it as is necessary for *absolute* safety."   If the plaintiff had paid any adequate heed to these and other explicit directions contained in the books, put into his hands by the defendant for his guidance, the accident would not have happened.

But apart from this ground, the plaintiff failed to show that he exercised due care for his protection.   He knew better than any one else just how his car was working, and how difficult it was to stop it.   For about two hours he had been running it, and had gone over his entire route and more.   He was just behind the car with which he came in collision for more than a quarter of a mile, and knew that his was a swifter car than the one ahead and, as he followed, was throwing his power off and on, and kept his car as near as he would, if his brake had been in perfect order. The car in front slowed down in the ordinary way at a regular stopping place.   Then, when he discovered that his brake was not stopping his car, he did not attempt to use the reverse, although he knew that this was the most efficient and quickest way of bringing it to a stop.   The danger of collision was as obvious to one with the knowledge, which the plaintiff possessed, as it could have been to any one else.   It was of such a nature as to be immediately understood and appreciated by one of ordinary intelligence.

The talk with the inspector should probably be regarded as nothing more than a suggestion that if he proceeded with suffi-

cient caution no harm would ensue. *Lodi* v. *Maloney*, 184 Mass. 240. But if given its fullest weight, it did not justify the plaintiff in running his car as if nothing was the trouble with it, when he saw that even the inspector was not able to make the brake work well and observed after leaving the inspector that it continued to work as badly as before. He was not justified in surrendering his own intelligence, but was bound to be constantly alert to avoid danger. *Wescott* v. *New York & New England Railroad*, 153 Mass. 460. *Kenney* v. *Hingham Cordage Co.* 168 Mass. 278. *McDonnell* v. *New York, New Haven, & Hartford Railroad*, 192 Mass. 538. Giving to the plaintiff the benefit of every reasonable inference from the facts and circumstances, there is not enough to warrant a finding that he was in the exercise of due care, or that his injuries did not result directly from his own negligence. *Jones* v. *New York, New Haven, & Hartford Railroad*, 184 Mass. 89. *O'Brien* v. *New York, New Haven, & Hartford Railroad*, 180 Mass. 403. The case is plainly distinguishable from *Ford* v. *Fitchburg Railroad*, 110 Mass. 240.

*Exceptions sustained.*