KATHERINE BUCHANAN, administratrix, *vs.* NEW YORK, NEW
HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.    November 22, 1912. — January 29, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Negligence,* Railroad.

In an action by the administrator of the estate of a rear end brakeman of a passen-
ger train against the railroad corporation by which he was employed, for caus-
ing his death in a collision, it appeared that the train on which the intestate
was such brakeman arrived late at a station, that another train on the same track
was due at the station, and that under the defendant's rules it was the duty of
the intestate to go back with danger signals to stop the following train in time
to prevent a collision, that the intestate wholly failed to perform this duty, that
the engineer of the following train neglected to observe the warning of the block
signals, and that the collision occurred. *Held,* that the plaintiff could not re-
cover, because the intestate's failure of duty contributed to the happening of
the accident, and the fact that the negligence of the engineer coöperated to
cause the accident did not excuse the negligence of the intestate or change its
effect.

TORT, by the administratrix of the estate of Malcolm W.
Buchanan, for causing the death and conscious suffering of the
plaintiff's intestate in a collision of trains on November 28, 1908,
when he was employed as a rear end brakeman on a passenger
train of the defendant, the declaration containing three counts,
the first two counts under R. L. c. 106, § 72, and acts in amend-
ment thereof, alleging that the injuries of the intestate resulting
in his death were caused by the negligence of a person in the em-
ploy of the defendant who was in charge or control of a signal,
switch, locomotive engine or train upon a railroad, and the third
count under St. 1907, c. 392, alleging that such injuries and death
were caused by the negligence of the defendant, or by the negli-
gence or unfitness of its agents or servants engaged in its business.
Writ dated March 9, 1909.

In the Superior Court the case was tried before *Brown,* J., who
at the close of the plaintiff's evidence, which is described in the
opinion, ruled that the plaintiff was not entitled to recover and
ordered a verdict for the defendant. The plaintiff alleged excep-

tions, containing a stipulation that, if the ruling and direction were right, judgment was to be entered for the defendant; and that, if the ruling and direction were wrong, judgment was to be entered for the plaintiff in the sum of $3,000.  ▪

*J. W. McConnell*, for the plaintiff.

*J. L. Hall*, for the defendant.

SHELDON, J.   When the train on which the plaintiff's intestate was the rear end brakeman or flagman stopped at the South Boston station, it was five or six minutes late.   Another train was due to leave the Boston station four minutes after the intestate's train, coming upon the same track.   Under the defendant's rules which were in evidence, applicable to this state of facts, it became the duty of the intestate, as soon as his train had stopped, to go back at once with fuses and torpedoes as danger signals, and take measures to stop the following train in season to avoid a collision. There is evidence that he did nothing of the kind, and there is no affirmative evidence that he did anything in compliance with these rules.   He had been furnished with a book of rules and time tables, and there is no ground for a contention that he was not acquainted with them.   *Foley* v. *Boston & Northern Street Railway*, 198 Mass. 532.   The rules were established by the defendant in the discharge of the high degree of duty which it owed to its passengers; and their strict observance by its servants is often essential to the safety of travellers.   A failure on the part of such servants to observe the requirements of these rules may not only cause the railroad company great pecuniary loss, but may cause one of those serious accidents which, with the loss of life and grievous bodily injury that they involve, rightly have been made the subject of severe condemnation.   Such an unjustifiable violation of proper rules, either causing or contributing to cause death or bodily injury, is, as between the company and its delinquent servants, negligence on the part of the latter.   *Wescott* v. *New York & New England Railroad*, 153 Mass. 460.   *Jones* v. *New York, New Haven, & Hartford Railroad*, 184 Mass. 89.   *Foley* v. *Boston & Northern Street Railway*, 198 Mass. 532.

We find in this case no justification or excuse for the intestate's failure to observe the rules.   Whatever might have been said as to the previous stops of his train, and whether or not the state of affairs at those times might have raised a question as to his duty

to leave his post at the rear end of his train to guard against danger from following trains, the evidence discloses nothing to throw doubt upon his duty to comply with the rules at South Boston. These rules could not be held to apply merely to an occasion where the train was stopped by some accident or obstruction, as in *Northern Pacific Railroad* v. *Poirier,* 167 U. S. 48. The duty imposed by them was absolute, to be performed without waiting for the engineer's signal or the conductor's orders, not a matter of his own judgment or discretion; and such cases as *Lake Shore & Michigan Southern Railway* v. *Parker,* 131 Ill. 557, and *Texas & Pacific Railway* v. *Leighty,* 88 Texas, 604, have no bearing. These rules were well adapted, and must be taken to have been designed, for the avoidance of accidents and the safety of human life and limb, and are not like those spoken of in *Strong* v. *Iowa Central Railway,* 94 Iowa, 380, 387. We find no evidence tending to show that in practice the rules had been waived, abandoned or superseded within the principle stated in *Brady* v. *New York, New Haven, & Hartford Railroad,* 184 Mass. 225, 228. The intestate had notice, at least at tower 80, some little time before reaching the South Boston station, that his train was upon the track of the Midland Division, which was to be taken by the following train.

It is manifest that the intestate's failure of duty contributed to the happening of this accident. The engineer of the following train doubtless should have been warned by the block signal which he passed; but the intestate should have seen to it that besides that signal the engineer should have also the warnings which it was the intestate's duty to give. As in *Wescott* v. *New York & New England Railroad,* 153 Mass. 460, this accident apparently was due to the effect of the negligence of another servant of the railroad company coöperating with that of the intestate; but no more than in the Wescott case does that fact exonerate the intestate. The engineer of the following train disregarded one signal which he ought to have observed and obeyed. The safety of the passengers on both trains required the intestate to comply with established rules by giving to that engineer another and a more emphatic warning. He cannot be heard to say that his failure to give that warning did not contribute to cause the collision.

Some rulings on evidence were excepted to, but we do not deem

it necessary to discuss them in detail. None of them can be sustained. The duty of the intestate to go back at South Boston and give the required warnings was independent of any orders from the engineer or conductor. Good * had not been employed on the defendant's road since 1906, and did not claim to have any knowledge of what was done under its rules for two years before the accident.

The verdict for the defendant was rightly ordered, and under the terms of the report judgment must be entered thereon.

*So ordered.*

---

* A witness called by the plaintiff.