RICHARD F. CUMMINGS *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Middlesex.     November 10, 1915. — January 7, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Negligence,* Street railway.

In an action by a motorman, against the street railway corporation by which he was employed, for personal injuries sustained (before the passage of St. 1914, c. 553,) by the car that the plaintiff was operating coming in collision with a car ahead of it owing to the failure to work of the brakes and the mechanism to reverse the power, it appeared that the plaintiff, who after having been given a book of rules and receiving preliminary instruction had begun work as a motorman, knew that the brake of the car was out of order and occasionally failed to work when applied, that one of the rules in the book required a motorman before taking any descending grade to reduce the speed of his car so as to test the working of the brake and, in case the brake failed to work, to reverse the power and if necessary to signal to the conductor to set the rear brake, that the plaintiff, when the car was going at the rate of ten or eleven miles an hour on a down grade, followed a car about five hundred feet ahead of him without reducing speed or testing the brake or the machinery for reversing the power, until the car ahead stopped, when the plaintiff tried to apply the brake and then to reverse the power and both appliances failed to work, and the collision occurred which caused the plaintiff's injuries. *Held,* that there was no evidence of due care on the part of the plaintiff, and that a verdict properly was ordered for the defendant.

TORT for personal injuries sustained by the plaintiff on August 10, 1910, when he was operating a street railway car as a motorman of the defendant on Washington Street in the part of Boston called Roslindale. Writ dated November 10, 1912.

In the Superior Court the case was tried before *Quinn*, J. The plaintiff at the time of the accident was about twenty-one years of age and had been the manager of a grocery, and he had been in the employ of the defendant a little more than a month. He testified on his direct examination that, as a result of an application for employment by the defendant, he was provided with a "Book of Rules" and a route-book, and that in accordance with instructions given him at that time, he went to the office of the defendant on Milk Street in Boston; that thence he was sent to the Dudley Street terminal of the defendant where he saw and interviewed the chief inspector, who gave him a "breaking-in slip" and sent him to the Forest Hills terminal station of the defendant; that the chief inspector told him to read the Book of Rules and to study them while breaking in; that he reported to the station master of the Forest Hills terminal and was told by him to report to the starter at the Forest Hills terminal and that an inspector would come out from Dudley Street and "learn" him to run a car; that the starter put him on a car with one Connors from whom he received instruction for about eight days; and that then under further orders he worked with different motormen learning different routes, perhaps twenty-five in all; that about two weeks before the accident he was made a spare man and as such was assigned "to any work that would be going;" that he learned how to start a car, how to brake it, to stop it, to run it and to throw a reverse; that Connors showed him how to throw a brake, and that when he attempted thereafter to stop or to start a car he did it as Connors had instructed him; that after he started to work with Connors he was examined as to his knowledge of the rules by the chief inspector at Dudley Street, who put to him several questions which he answered, and that the chief inspector said to him at the time "'You are all right, you know the rules,' he says, 'and now,' he says, 'you are all right; after coming back from Milk Street you won't have any trouble.' He says, 'You go back to Forest Hills and you won't have any trouble; just do what the starter and inspector and station master tell you, and you will be all right.'"

The evidence in regard to the happening of the accident that caused the plaintiff's injuries is described in the opinion.

The book of rules referred to above was put in evidence, and contained, among other rules, the following, which are mentioned in the opinion:

Rule 52, "Handling Disabled Cars.

"(a) If a car becomes disabled, don't allow a blockade while trying to make repairs, but couple onto next car and have disabled car taken to car house or to such other place as will avoid obstruction, and very promptly report by telephone or otherwise to division headquarters and await orders."

Rule 135, "Coasting on steep grades.

"(a) When running on steep grades care must be taken not to exceed speed limits, and at all times be alert and have car under perfect control.

"(b) Before taking any descending grade, the speed of the car must be so reduced as to test the working of the brakes."

Rule 136, "Failure of Brake.

"(a) Should brake fail, use reverse, and if necessary signal conductor to set rear brake."

At the close of the plaintiff's evidence the judge ruled that the plaintiff was not entitled to recover, and ordered a verdict for the defendant. The plaintiff alleged exceptions.

*W. I. Badger,* (*D. J. Gallagher* with him,) for the plaintiff.

*H. D. McLellan,* for the defendant.

BRALEY, J. The car previously to and at the time of the collision did not respond to the hand brake but ran irregularly, and, without deciding it, we assume that upon the testimony the jury could find that the irregularity of the action of the brakes resulted from defective mechanism which the defendant in the proper discharge of its duty as employer should have known and remedied. *Ruddy* v. *George F. Blake Manuf. Co.* 205 Mass. 172, 178, 189.

But, if this issue was for the jury, the plaintiff also must show his own due care. It appears that after preliminary instructions he began work as a motorman, and, on the morning of the day of the accident, the plaintiff, after the car was under way, became aware that the brake when applied occasionally failed to work properly. While the jury were to say on the evidence whether the car had become disabled within the meaning of rule fifty-two,

yet the rules that before taking any descending grade the speed of the car must be so reduced as to test the working of the brake, and that, if the brake fails to work the reverse must be used, and if necessary the conductor must be signalled to set the rear brakes, are unambiguous. The plaintiff was bound to obey them, unless by reason of defective equipment the car could not be operated in the manner designated. *Corsick* v. *Boston Elevated Railway*, 218 Mass. 144.

It is certain from his own testimony that, when the car arrived at the junction and the plaintiff stopped for an inbound car to pass on ahead, he knew it was doubtful whether the brake if applied would diminish the speed or if necessary bring the car to a stop. It was with this knowledge that at a speed of ten or eleven miles an hour on a down grade he followed the car ahead, which was distant nearly five hundred feet, without reducing speed or testing either the brake or the reverse. The forward car meanwhile stopped, with the plaintiff's car two hundred feet in the rear. It was not until then that the plaintiff threw off the power and began to wind up the brake, intending to reduce the speed and run slowly but not to stop until the other car started. The brake failing to act he wound it further in an effort to stop. The car kept on, when the plaintiff rang the gong and waved his hand for the motorman ahead to start. The forward car, however, remained stationary, and the reverse was used. It did not respond, and a collision followed causing the plaintiff's injuries. The jury doubtless could find that if the reverse had worked the accident would have been prevented. But the plaintiff would not have been obliged to use the reverse or have been exposed to the danger if upon passing to the down grade he had so reduced the speed as to test the working of the brake and if necessary the reverse, instead of waiting until the distance was so shortened that, unless the brake known by him to be unreliable held, a collision was almost unavoidable. To go on without slackening speed until nearly within striking distance at the rate the car was moving, not only was a violation of the rules, but exhibits a failure on his part to exercise the care of the ordinarily prudent man having full control of his own conduct under like conditions. The case accordingly is governed by *Foley* v. *Boston & Northern Street Railway*, 198 Mass. 532, 537; *Buchanan* v. *New York, New Haven, &*

*Hartford Railroad,* 213 Mass. 473, 475, and is not within *Corsick* v. *Boston Elevated Railway,* 218 Mass. 144, much relied on by the plaintiff.

The exceptions to the exclusion of evidence are sufficiently covered by what has been said, and, the verdict for the defendant having been rightly ordered, the exceptions must be overruled.

*So ordered.*