[L. A. No. 4040.   Department One.—December 19, 1917.]

## AUGUST SCHUH, Respondent, v. R. H. HERRON COMPANY (a Corporation), Appellant.

NEGLIGENCE—MASTER AND SERVANT—ACTION FOR PERSONAL INJURIES.— Where, in an action for damages for personal injuries, the plaintiff's account of the circumstances, when testifying as a witness, is at variance with the statements in the original complaint and in an amended complaint, a ruling excluding such pleadings when offered on cross-examination is erroneous.

ID.—AMENDED PLEADINGS AS EVIDENCE—ADMISSIONS.—The rule that a pleading superseded by an amendment cannot be used as an admission to contradict a fact alleged in a subsequent amendment is subject to exception in cases where the person who files and verifies the pleading is himself a witness, and in such cases he may on cross-examination be questioned concerning the portions of his original pleading inconsistent with the pleading upon which the trial is had, for the purpose of showing statements inconsistent with his testimony on the stand.

ID.—DEFECTIVE APPLIANCE—NOTICE—CONTRIBUTORY NEGLIGENCE.—In an action by an experienced machinist against his employer for injuries received while shifting a moving belt, it was error to exclude evidence that the defendant had conspicuously posted at a number of places in the machine-shop a "Notice to Employees" forbidding them to work with any tools or machinery which through use had become defective, but to report such defects to the foreman or superintendent, and warning them that belts should not be shifted while the shafts were in motion, since the jury might reasonably have inferred that the plaintiff had seen the notice and knew its contents, and if he had this knowledge, the defendant was entitled to have the evidence go to the jury, in order that they might determine whether the plaintiff was guilty of contributory negligence in using the defective belt without examination or without reporting the defect, and also in shifting the belt while in motion, as the evidence showed he did.

ID.—APPEAL—QUESTION REVIEWABLE.—Where the defense of contributory negligence is defectively pleaded in an action for personal injuries, but, without objection that such defense was not pleaded a large part of the testimony on the trial was devoted to that subject, and the instructions show that it was deemed to be an issue submitted to the jury, an erroneous ruling on the subject will be reviewed by the supreme court.

ID.—ASSUMPTION OF RISK—DEFENSE ABOLISHED—EFFECT ON DOCTRINE OF CONTRIBUTORY NEGLIGENCE.—The abolition of the defense of assumption of risk by the Employers' Liability Act (Stats. 1911, p. 796), did not destroy the defense of contributory negligence.

ID.—MASTER AND SERVANT — CONTRIBUTORY NEGLIGENCE.—Violation by an employee of a rule promulgated by his employer for his protection is an act of negligence *per se*, and, when it contributes to his own injury, precludes a recovery.

ID.—EVIDENCE—CUSTOM OF EMPLOYEES.—Evidence that it was not unusual, and in fact that it was the custom of employees in the defendant's machine-shop, to shift a belt by striking it with the bare hand does not of necessity establish the proposition that this method of shifting the belt was not negligent nor dangerous.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. J. P. Wood, Judge.

The facts are stated in the opinion of the court.

Gray, Barker & Bowen, and William A. Bowen, for Appellant.

William C. Jenkins, Earle H. Smith, and Wm. Coleman, for Respondent.

SHAW, J.—In an action for personal injuries, the plaintiff recovered judgment against the defendant for damages. The defendant appeals from the judgment and from an order denying its motion for a new trial, the latter having been taken before the law abolishing such appeals was enacted.

The defendant was carrying on a machine-shop. It had therein a lathe, built on a steel table and fastened to a horizontal shaft turned by a belt from a counter-shaft above. For the purpose of changing the speed of the lathe the shaft and counter-shaft are each fitted with what are called "cones." A cone is a succession of pulleys, each slightly

larger than the one before, with an approach or inclined plane connecting them so that the belt will easily pass from one to the other. The cone on the counter-shaft above increases in size from right to left; that on the lathe shaft was to the left of the lathe and increases in size from left to right. On the upper cone the belt is shifted by means of a stick or lever hanging down from a point above the cone and by the side of the belt. By pressing it against the belt the latter may be moved to another part of the upper cone. On the lower cone the belt may be moved sidewise by pressing against it with a stick or tool, or with the bare hand. But in doing this when the belt is in motion, it is necessary first to shift the belt on the upper cone to a smaller part thereof so as to loosen it.

In the complaint upon which the trial was had, plaintiff alleged that he was in the service of the defendant, and was operating a lathe which was turned by means of a belt so arranged that it could be shifted along the shaft to make the lathe run faster or slower, as desired; that the power to operate the belt, and which ran the lathe, was controlled by a lever directly over and above the lathe; that the lathe was defective and unsafe; that the plies or layers of the belt had become unglued or split in certain places so that they would separate; that said lever was difficult to move and operate because it was improperly connected and adjusted, and its connections were rusty and old; that while plaintiff was operating said lathe he attempted to shift said belt, and by reason of its defective condition his left hand was caught between the plies of the belt, and thereby his left arm was drawn down between the cone of the lathe and the body of the machine or table, causing the arm to be cut and bruised and the bone fractured, for which injury the damages were claimed. The particulars concerning the manner in which the injury occurred were inserted in the complaint by an amendment made three days before the trial. This was the third amendment of this part of the complaint.

The first error complained of is the ruling of the court below upon cross-examination of the plaintiff while testifying as a witness in his own behalf. His testimony in chief was that in shifting the belt he attempted to do so with his bare hand; that the belt was slack at that instant and the

plies open wide enough to admit his fingers; that they were caught between the two plies, which immediately became taut, and drew his arm down between the cone of the lathe and the body or table of the machine. The original complaint alleged, on this subject, that the shifting arrangement and its connections, and the lever by which it was operated, were loose, rusty, and worn out, and were by reason thereof unsafe to operate, and "that by reason of said worn-out condition of said shifting arrangement, lever, and the belts connected thereto," the plaintiff's "left arm was pulled in under and between the belt and the cone of said lathe,'" instead of it having been caught in the plies and "drawn down in and between the said cone of said lathe and the body of said machine," as alleged in the final amendment. In another amendment thereto the plaintiff had alleged that the lathe was defective and unsafe and the shifting belt was torn, worn, patched, and split, and said lever difficult to move because it was improperly adjusted and connected, and its connections loose, rusty, and worn out, and that by reason of said defects, and while plaintiff was operating said lathe, his left arm "was caught between the shifting belt and the cone of said lathe," and thereby severely injured, as afterward alleged. On the cross-examination he was first asked whether at any time prior to the filing of the last amendment to the complaint, filed a few days before, he had filed any pleading intimating that there was any opening in the plies of the belt. This was ruled out as not proper cross-examination. The evidence would perhaps have been incompetent, for the pleadings were the best evidence of their contents. But that was not the ground of the objection. Thereupon the original and amended complaint referred to were introduced in evidence. Later, however, the court ordered that said pleadings be stricken out, and instructed the jury that they should not be considered. It will be observed from the foregoing statement as to the pleadings that there was a distinct variance between the statements of the witness in his testimony and in his last amendment on the subject, and his statement concerning it in the previous pleadings, in this, that in the last pleading and in his testimony he stated that his hand was drawn down between the cone of the lathe and the body of the machine, whereas in the previous pleadings he had alleged that it was drawn in between the belt of the lathe

and the cone thereof.   Also, in the first complaint he did not state that his hand or fingers were caught between the plies of the belt, or that the belt was defective by reason of the plies coming apart.   The court erred in striking out the pleadings.   It is true, as stated by the court in making its ruling, that a pleading which has been superseded by an amendment can no longer perform any office as a pleading, and cannot be used on the trial as admissions to contradict a fact alleged in a subsequent amendment.   (*Mecham* v. *McKay*, 37 Cal. 165.)   But this rule is not universal, and there is an exception in cases where the person who files and verifies the pleading is himself a witness on the trial.   In such a case he may, on cross-examination, be questioned concerning the portions of his original pleadings which are inconsistent with the pleading upon which the trial is had, for the purpose of showing statements inconsistent with his testimony on the stand.   (*Johnson* v. *Powers*, 65 Cal. 180, [3 Pac. 625] ; *Estate of O'Connor*, 118 Cal. 71, [50 Pac. 4].)   It was proper, therefore, for the jury to have before it the varying statements of the plaintiff on the subject of the exact manner in which he received his injury.

Evidence was given that the defendant had posted notices in a number of conspicuous places in its machine-shop entitled ''Notice to Employees,'' wherein the employees were forbidden to use or work with any tools or machinery which through use had become defective, and were ordered to examine all tools before using, and if found defective to refrain from using them and report to the foreman or superintendent, and that belts should not be shifted except while the shafting was not in motion, and that if any employee violated these rules he did so at his own risk.   It was further shown that the plaintiff had been a machinist and had known about the operation of lathes and the handling of pulleys and shifting levers for about seventeen years; that for ten years his special work had been in connection with lathes, and that he had been working in the defendant's shop on lathes and otherwise, as general machinist, for six or seven months prior to the accident.   Objection to this notice was made on the ground that it was immaterial, and that the defendant could not, by posting such notice, relieve itself of responsibility or liability for neglect.   This objection was sustained and

the evidence excluded.   In this ruling the court erred.   The evidence was of such a character that the jury might reasonably have inferred that the plaintiff had seen the notice and knew its contents.   It expressly directed that employees should examine all tools before using them, and report them and not use them if defective, and that belts should not be shifted while the shafting was in motion.   If the plaintiff had this knowledge, it would tend to show that he was negligent, first, in proceeding to use the defective belt without examination or without reporting the same, and, second, in attempting to shift it while the shaft was in motion, as the evidence shows that he did.   The defendant was entitled to have this evidence go to the jury in order that they might determine the question whether or not the plaintiff was guilty of contributory negligence.

The plaintiff contends that the ruling cannot be reviewed, because, as he claims, there was no issue on the subject of contributory negligence, pointing out that the only allegation thereof in the answer was that the injury to plaintiff ''was solely and proximately caused by the failure of plaintiff to exercise ordinary care on his own behalf for his own safety,'' and, further, that ''the negligence of plaintiff and his failure to exercise ordinary care on his own behalf for his own safety contributed to any injury or damage suffered by plaintiff''; in support of which claim he refers to *Crabbe* v. *Mammoth etc. Co.,* 168 Cal. 505, [143 Pac. 714].   In this case, however, the defense of contributory negligence was considered as properly pleaded throughout the trial.   No objection was made at any time on the ground that it was not pleaded. A large part of the testimony on the trial was devoted to that subject, and the instructions of the court show that it was deemed a matter in issue to be submitted to the jury. Under these circumstances a defective plea cannot be made available in support of an erroneous ruling on the subject. (*Kelly* v. *Santa Barbara etc. Co.,* 171 Cal. 415, 421, [Ann. Cas. 1917C, 67, 153 Pac. 903] ; *Perry* v. *Angelus Hospital Assn.,* 172 Cal. 311, 316, [156 Pac. 449].)

The injury occurred in 1913, after September 1, 1911, when the Employers' Liability Act of 1911 took effect, and before the Workmen's Compensation Act of 1913 (Stats. 1913, p. 279) was in force.   The act of 1911 provides that in any action by an employee against an employer for damages from

an injury caused by the employer's neglect, "it shall not be a defense: (1) That the employee either expressly or impliedly assumed the risk of the hazard complained of." (Stats. 1911, p. 796.)   The respondent argues that the only effect of the notice, as evidence, was to show that the plaintiff had assumed the risks incident to his employment, and that as the above statute abolishes that defense, the notice was immaterial to the case.   The court below apparently based its ruling upon that theory.   It is obvious that the abolition of the defense of assumption of risk does not destroy the defense of contributory negligence.   The act of 1911 itself recognizes this fact.   The notice was offered as evidence of contributory negligence by plaintiff, and it had a direct tendency to prove such negligence if, as the jury might have inferred, the plaintiff was aware of its contents. If the employee is ordered to examine a tool for defects, and report the same, if any, before using it, and, failing to do so, he is injured from a defect which an ordinarily careful examination would have disclosed to him, it is obvious that the order made it his duty to make the examination, that his failure to obey would be a neglect of that duty, and that this neglect would be a contributing cause of his injury. Likewise, if he is ordered not to shift the belt while the shafting is in motion, and nevertheless does so, and is injured thereby, it may be true that he assumes the risk of injury from so doing, but by the same act he would be guilty of negligence contributing to his injury.   "Violation by an employee of a rule promulgated by his employer for his protection is an act of negligence *per se,* and, when it contributes to his own injury, precludes a recovery." (*Dallas Coal Co.* v. *Rotenberry,* 85 Ark. 240, [107 S. W. 997].   To the same effect, see *Shanny* v. *Androscoggin Mills,* 66 Me. 420; *Foley* v. *Boston etc. Co.,* 198 Mass. 532, [84 N. E. 846]; *Haynes* v. *Penfield,* 231 Pa. St. 329, [80 Atl. 565]; *Carlson* v. *Marston,* 68 Minn. 400, [71 N. W. 398]; *Andrews* v. *Valley Ice Co.,* 167 Cal. 21, [138 Pac. 699]; Thompson on Negligence, sec. 5395.)   The doctrine of assumption of risk means that the law implies, as a part of the contract of service, that the servant agrees to and assumes all the ordinary risks of personal injury incident to the business and not caused by the direct negligence of his employer.   (*Beeson* v. *Green Mountain etc. Co.,* 57 Cal. 29.)   If a servant goes to work in a place which

he knows to be dangerous, he assumes the risk arising from such known dangers. So, if he accepts for his use a tool furnished by the master, knowing it to be defective, and that such defect makes it dangerous, he assumes the risk of injury that may be caused to him therefrom. This doctrine has no necessary relation to the doctrine of contributory negligence. If the doctrine of assumption of risk were not a part of the law of master and servant, as it has not been since the act of 1911, the law of contributory negligence would remain, and if the servant contributes to his own injury by negligent disregard of his master's orders, given to him for his own safety, he cannot recover, notwithstanding the abolition of the defense of assumption of risk.

These errors were not trivial or unimportant. There was evidence that while it was safer to shift the belt on the lower cone by means of a tool or other article, it was not unusual in the defendant's machine-shop for those using such lathes to shift the belt below by striking it with the bare hand. There was evidence that this was the custom. This, however, does not of necessity establish the proposition that this method of shifting the belt was not negligent or dangerous. It might also be said to establish the proposition that the employees of the defendant, by constant exposure to danger, had grown careless of their own safety against such danger. It was for the jury to determine which was the correct theory. And in any event, if the defendant had positively forbidden the shifting of the belt while in motion, or the use of a defective tool without examination for defects, when such defects were easily discernible with ordinary care, the act of the servant in doing so would be negligent, and he could not recover for the consequent injury if, at the time of committing the act, he knew of the order forbidding him to do so. We cannot say that the defendant did not suffer substantial prejudice from these rulings. The judgment must therefore be reversed.

Numerous objections are made to the instructions given, and to the refusal to give instructions asked. We do not deem it necessary to consider these objections. For the most part the grounds of the criticisms are entirely removed by other parts of the instructions given, which complete the statement of the law on the subject, and the others are not of sufficient importance to justify consideration. The instructions upon another trial will probably not follow the exact

verbiage of those given by the court upon the trial below. It is also unnecessary to consider the objection that the evidence does not sustain the verdict.

The judgment is reversed.

Sloss, J., and Lawlor, J., concurred.