[S. F. No. 8528.  In Bank.—January 27, 1920.]

## WESTERN STATES GAS AND ELECTRIC COMPANY (a Corporation), Respondent, v. BAYSIDE LUMBER COMPANY (a Corporation), Appellant.

[1]  MUNICIPAL CORPORATIONS—ORDINANCE—USE OF STREETS—PERMISSION OF MAYOR.—Under a provision of a city ordinance declaring that any person can have the use of any public street for any proper and lawful purpose for a reasonable time on obtaining permission therefor from the mayor of the city, a permit given by a member of the council is not authorized.

[2]  PUBLIC NUISANCE—OBSTRUCTION OF STREET.—An obstruction of a public highway is a nuisance under the general law and under a municipal ordinance prohibiting the obstruction of public streets.

[3]  MUNICIPAL CORPORATIONS—USE OF STREETS FOR PRIVATE PURPOSES.—Except where the use is temporary or the power has been delegated by the legislature, a municipality has no power to au-

---

3. Right of abutting owner to permanent use of subsurface of street or highway, note, 7 A. L. R. 646.

Right of abutting owner to use street including sidewalk for the deposit, exhibit or sale of goods, note, 6 A. L. R. 1314.

Power of municipality to establish or license market stalls or stands in public street, note, Ann. Cas. 1914D, 352.

thorize the use of streets for a private purpose, nor to grant to an abutting owner the right to so construct his building as to encroach on the street, or to use the streets for stands or booths for business purposes.

[4] Id.—Use of Street for Lumber-yard—Falling of Lumber—Liability for Death.—A municipal corporation has no authority either under the general law or under a municipal ordinance allowing a private use of a street for a reasonable time to allow a lumber company to use a part of a street for a lumber-yard for a number of years, and the piling of the lumber in the street constitutes a public nuisance, and the company is liable for the death of a person resulting from the falling of the lumber.

[5] Workmen's Compensation Act — Action by Employer for Death of Employee—Notice of Injury—Actual Knowledge.—Under section 20 of the Workmen's Compensation Act (Stats. 1913, p. 290), an employer had actual knowledge of an accident sufficient to entitle it to bring suit for the death of its employee without being served with written notice of the injury, where its foreman visited the scene before the deceased was removed and while the circumstantial evidence of the cause of death was still manifest to observation.

[6] Id.—Death of Employee — Payment of Compensation to Family—Right of Subrogation.—Where an employer has paid compensation to the family of a deceased employee, he is entitled, under section 31 of the Workmen's Compensation Act, to be subrogated to the rights of the family and to bring suit for damages against the third person whose negligence caused the death.

[7] Id.—Action by Employer—Evidence—Dependency of Widow of Deceased Employee.—In an action brought by an employer under section 31 of the Workmen's Compensation Act for the death of an employee against a third person whose negligence caused the death, the defendant was not prejudiced by the admission of testimony that the widow of the deceased was dependent upon him for support, where it appeared that she had received four thousand five hundred dollars in compensation and three thousand five hundred dollars in life insurance.

[8] Id.—Relevancy of Dependency.—The right of subrogation given to an employer under the Workmen's Compensation Act only exists in the case of a lawful claim against an employer by persons wholly or partially dependent upon the employee for support, and this makes the fact of dependency relevant in an action by the employer for the injury or death of the employee.

[9] Subrogation of Employer—Provision Constitutional.—The provision of the Workmen's Compensation Act concerning the right of subrogation of the employer is merely a legislative recognition of the equitable doctrine of subrogation, and does not go beyond

the purview of article XX, section 21, of the constitution fixing the liability of employers.

[10] Id.—Killing of Employee—Falling of Pile of Lumber in Street—Death in Performance of Duties of Employment—Sufficiency of Evidence.—In an action brought by an employer under section 31 of the Workmen's Compensation Act to recover for the death of an employee killed by the falling of a pile of lumber placed in a city street by a lumber company, the conclusion of the jury that the deceased was engaged in the performance of the duties of his employment at the time he was killed is justified by facts in evidence from which it is to be inferred that he, having completed his tasks at the office of the plaintiff, was about to proceed to other duties of his employment which involved the use of a horse and wagon, and while unhitching the horse which was tied near the lumber he was killed.

[11] Id.—Action by Employer—Measure of Damages.—Where an action is brought under section 31 of the Workmen's Compensation Act by an employer against a third person for the death of an employee, the measure of damages is not fixed in the act, but the employer must pay the dependents of the employee the difference, if any, over and above the amount paid by the employer.

[12] Id.—Transfer of Right of Recovery to Employer—Making of Claim by Widow of Deceased Sufficient.—In view of the fact that section 19a of the Workmen's Compensation Act gives the right of recovery to the widow of the employee and not to the minor children, the making of a claim by the widow alone is sufficient to transfer to the employer the right to recover established under section 377 of the Code of Civil Procedure.

[13] Id.—Right of Action by Employer Independent of Carrier—When Proper.—Where an employer has paid the widow of a deceased employee the compensation provided by law, he is entitled to maintain the suit against the third person for such death, regardless of the claim that the right of action is in the insurance carrier of the employer, in the absence of any evidence that the carrier has paid the compensation or served notice upon the widow that it accepted the responsibility.

[14] Id.—Contributory Negligence — Pleadings — Instruction.—In an action by the employer under section 31 of the Workmen's Compensation Act for the death of an employee, where contributory negligence was not pleaded as a defense, the answer alleging that the injury was wholly the result of the negligence of the deceased, which amounted to nothing more than a denial of negligence on the part of defendant, an instruction that contributory negligence was not a defense in the action was properly given.

[15] ID.—AMOUNT OF DAMAGES—PECUNIARY LOSS—ELEMENT OF LOSS OF CARE OF FATHER—INSTRUCTIONS.—In an action by a subrogated employer for the death of an employee who left a widow and minor children, instructions on the measure of damages which authorized the jury in arriving at the pecuniary loss to consider the element of loss of care in the case of the children cannot be made the subject of complaint by defendant, in the absence of request for a more pointed and emphatic instruction limiting the liability to pecuniary loss.

APPEAL from a judgment of the Superior Court of Humboldt County. Denver Sevier, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. W. Wilson and Charles A. Shurtleff for Appellant.

Pierce H. Ryan for Respondent.

WILBUR, J.—This action was brought to recover for the death of J. J. Sullivan, an employee of the plaintiff, who, it is alleged, was killed by reason of the misconduct of the defendant. Plaintiff claims to have succeeded to the rights of the widow and children of the deceased, under the terms of the workmen's compensation law (Stats. 1913, p. 295, sec. 31), and brings suit by virtue of that statutory subrogation to recover from the defendant. The defendant was operating a lumber-yard on both sides of and on Whipple Street, in the city of Eureka, using a portion of that street for the piling of lumber. The deceased was killed by the falling of a portion of a pile of lumber which was immediately adjacent to a hitching-post in the center of Whipple Street, to which was hitched a horse and wagon used by the deceased in his occupation as foreman of the plaintiff corporation. The accident occurred about 3:50 in the afternoon. Numerous questions were raised by the defendant with relation to the right of the plaintiff to recover, based upon the provisions of the workmen's compensation law, but before considering these matters we will consider the question arising out of the alleged responsibility of the defendant for the death of the deceased. This responsibility is based upon the theory that the piling of lumber in a public street was a public nuisance, and that the same was so negligently piled that it fell and killed the deceased. An ordinance of the city of

Eureka prohibited the obstruction of the public streets, but that ordinance contained a provision upon which the defendant relies for a reversal by reason of a ruling of the trial court upon evidence offered by it and upon an instruction to the jury given upon the subject. This provision is as follows: "Sec. 7. Any person can have the use of any public street, sidewalk or alley for any proper and lawful purpose for a reasonable time, on obtaining permission therefor from the mayor of the city." The defendant offered evidence to show that an application was made to a member of the city council by defendant for leave to pile lumber upon the westerly end of Whipple Street. [1] Any permit given by a member of the council would not comply with the ordinance in question, but in connection with the ruling of the court the defendant offered to prove, in effect, that the permit authorized by section 7 of the ordinance was given. The court held that the defendant would not be permitted to show that it had obtained permission from the duly authorized authorities of the city to pile lumber in a street in pursuance of the ordinance. [2] An obstruction of a public highway is a nuisance under the general law as well as under the ordinance in question. (Pol. Code, secs. 2731, 2737, 2739; Civ. Code, sec. 3479; Pen. Code, secs. 370, 372; *Ex parte Taylor,* 87 Cal. 91, [25 Pac. 258].) In determining the question as to whether or not authority from the mayor of the city of Eureka would authorize the use in question—for, in view of the ruling of the trial court, we must assume that the defendant could have made such proof—we should consider the nature and scope of the authority of the municipality over the street in question and the right of the city council to delegate to the mayor the authority to issue permits. The rule is thus stated in 28 Cyc. 870: [3] "Except where the use is temporary or the power has been delegated by the legislature, a municipality has no power to authorize the use of streets for a private purpose, that is, one from which neither the municipality nor its citizens derive any consideration or benefit. . . . And a municipality has no power to grant to an abutting owner the right to so construct his building as to encroach on the street, nor to use the streets for stands or booths for business purposes." It would appear from this statement, and we find no authority to the contrary, that the city of Eureka would have no power

to authorize the use of a street for a lumber-yard. (See, also, *Strong* v. *Sullivan,* 180 Cal. 331, [4 A. L. R. 343, 181 Pac. 59; notes, 125 Am. St. Rep. 343, 345, 348; 1 Am. St. Rep. 840, 841].)   Examining the evidence in the light of this principle, it appears that the post to which the horse used by the deceased was hitched at the time of the accident was almost on a center line of the sixty-foot street, and that the lumber pile was within, one foot of the post. This lumber pile was one of ten or more piles located at intervals along the center line of the street. There were also nine piles of lumber at intervals along the north property line, each extending into the street about ten feet. Five of the piles of lumber along the center line of the street extended south of this line about twelve and a half feet, leaving to the south thereof a passageway for travel of only seventeen and one-half feet. The lumber was piled as usual in lumber-yards, except that it is claimed there were no cross-ties holding the tiers together, and to this defect and the fact that it was three inches out of plumb, is ascribed the fall of the lumber which killed the deceased. The height of the piles varied, the pile that fell being about nine feet high. It appears that the street had thus been used by defendant for a number of years and that the particular pile which caused the death of the deceased had been placed in the street two or three months before the accident and was to remain there indefinitely. Without considering the extent to which a city may authorize temporary obstructions in a public street, or permanent structures for the purpose of approach to abutting property, such as was involved in *Marini* v. *Graham,* 67 Cal. 130, [7 Pac. 442], and *Ex parte Taylor,* 87 Cal. 91, [25 Pac. 258], it is sufficient for the purposes of this case to say that the use of a portion of the public street as a lumber-yard, as aforesaid, was neither "lawful nor proper," nor for a "reasonable time," within the meaning of section 7 of the city ordinance, and, therefore, not one which the mayor of the city was authorized by such ordinance to permit. Even had the ordinance in question attempted to grant to the mayor power to issue such permits, the power to grant the use of the street for such purposes could not have been delegated by the legislative authority of the city to the mayor, even if it should be conceded that the city council had the power to legalize such an obstruction. [4] It follows that both

under the provisions of the general law, above quoted, and under section 4 of the ordinance in question, which provides that, "Any person who will throw, deposit, or place any rubbish . . . or obstruction of any kind, except as hereinabove provided, in or upon any public street, lane, sidewalk, park, alley, or public thoroughfare, shall be deemed guilty of committing a public nuisance," the ruling of the trial court excluding the evidence was correct; that the piling of lumber in the public street constituted a public nuisance, and that if the death of the deceased proximately resulted from the falling of the lumber in question, the defendant is responsible for his death. To this effect the jury was properly instructed. (*McKune* v. *Santa Clara Valley Mill & Lumber Co.*, 110 Cal. 480, [42 Pac. 980].)

It is contended that plaintiff was not entitled to sue for the death of its employee. The Workmen's Compensation Act expressly authorizes such suit where a lawful claim is made against the employer. (Stats. 1913, p. 295, sec 31.) It is claimed, however, that as no written notice of this injury was served on the plaintiff, it is not entitled to bring this suit, unless it had "*actual knowledge* of the accident," which by the statute is made equivalent to such notice. (Stats. 1913, p. 290, sec. 20; *Smith* v. *Industrial Acc. Com.*, 174 Cal. 199, [162 Pac. 636].) **[5]** The evidence, however, sufficiently shows that plaintiff had actual knowledge of the accident. Its foreman arrived at the scene of the accident before the deceased was removed and while the circumstantial evidence of the cause of his death was still manifest to his observation. Under these circumstances the law charges the employer with notice. Thereafter a claim was made by the widow of deceased on, and granted by, the employer. **[6]** This, under the law, entitled the employer to be subrogated to the rights of the family of the deceased and authorized the bringing of the suit in question. (Workmen's Compensation Law, sec. 31.)

Upon the authority of *Mahoney* v. *San Francisco etc. Ry. Co.*, 110 Cal. 471, [42 Pac. 968, 43 Pac. 518], *Green* v. *Southern Pacific Co.*, 122 Cal. 563, [55 Pac. 577], *Simoneau* v. *Pacific Electric Ry. Co.*, 159 Cal. 506, [115 Pac. 320], and *Steinberger* v. *California Electric Garage Co.*, 176 Cal. 386, [168 Pac. 570], the following testimony, adduced over defendant's general objection, is claimed to be erroneous

and prejudicial: "Q. Did you have any other means of support except your husband's earnings? A. No, sir." Plaintiff, however, had introduced in evidence the written claim made against it by the widow, wherefrom it appeared that the deceased left surviving him a widow and three minor children, and that the deceased had no source of income besides his wages. The introduction of this claim is also counted on by the defendant as error, but as plaintiff's motion to strike the same out was resisted by the defendant, it cannot now complain of its introduction. [7] In view of this testimony, and the legal presumption that the husband did his duty in supporting his wife and children, the defendant was not prejudiced by testimony that she depended on her husband for support, particularly in view of the fact that the evidence showed that the widow had received four thousand five hundred dollars in compensation from the plaintiff and three thousand dollars life insurance. She was entitled to rely upon her husband for support, and the admission of the evidence that she had received seven thousand five hundred dollars compensation for his death certainly would overcome any prejudice that might have accrued because she had stated that she had no means of support other than her husband's wages. The defendant was not entitled to this latter evidence (sec. 31, *supra*), and, in view of its admission, ought not to be heard to complain of the ruling in question. Furthermore, it cannot be said that "such testimony could have been offered for no other purpose than to create prejudice . . . ," as in *Green* v. *Southern Pacific Co.,* 122 Cal. 563, [55 Pac. 577]. [8] Here the plaintiff relies upon a statutory subrogation as the foundation of its claim, and this subrogation only exists in the case of a lawful claim against it by persons *wholly* or *partially* dependent upon the deceased for support. (Workmen's Compensation Law, Stats. 1913, sec. 15, subds. c, 1, 2.) This makes the fact of such dependency relevant, and might serve as an excuse for the offer of such evidence, event where the dependent is a wife living with the deceased at the time of his death, and, therefore, conclusively presumed to be wholly dependent upon him for support. (Id., sec. 19, subds. a, 1.) While the plaintiff was entitled to rely on this conclusive presumption in establishing the facts which resulted in its being subrogated to the claim of the

family, the offering of such evidence in further proof of the fact of dependency does not necessarily evidence an intention to play upon the sympathy of the jury or to secure an unjust advantage. The evidence may have been introduced in an abundance of precaution in view of the contention then advanced, and still maintained, by the defendant that there was no subrogation in favor of the plainitff.

[9]   With reference to the contention that the law is unconstitutional in so far as it operates to transfer the cause of action to the plaintiff, for the reason that it goes beyond the purview of the constitutional provision (art. XX, sec. 21) authorizing legislation fixing the liability of employers to employees and deals with the liability of third persons, it is sufficient to say that the statutory provision concerning the right of subrogation of the employer is merely a legislative recognition of the equitable doctrine of subrogation, and is clearly within the legislative authority. We have recently considered the effect of such legislation in *Stackpole* v. *Pacific Gas & Electric Co.*, 181 Cal. 700, [186 Pac. 354], and need not give further consideration to that subject at this time.

It is contended that the evidence fails to show that the deceased was engaged in the performance of his duties at the time of the injury. The accident occurred during the working hours and it is to be inferred from the facts in evidence that the deceased, having completed his tasks at the office of the plaintiff, was about to proceed to other duties of his employment which involved the use of the horse and wagon, and that while unhitching the horse he was killed.   [10]   The evidence was sufficient to justify the conclusion of the jury that he was engaged in the performance of the duties of his employment at the time he was killed.

[11]   There is nothing in the point that the measure of damages is that fixed in the Workmen's Compensation Act for compensation for injuries to be paid by the employer to the dependents of the employee. This action was brought against a third person causing such death, to recover the full amount of damages suffered by the family, and plaintiff is required to pay to the family the difference, if any, over and above the amount theretofore paid to her.

[12] With reference to the question as to whether or not this suit can be maintained where no guardian is appointed for the minor children and no claim is made by them against the employer, except the claim made by the mother, it is sufficient to say that the statute (Workmen's Compensation Law, sec 19a) gives the right of recovery to the widow and not to the children. The making of the claim, therefore, by the widow against the employer was sufficient to transfer to it the right of recovery established under section 377 of the Code of Civil Procedure. It is, therefore, unnecessary in order to perfect the plaintiff's right of subrogation for the children to make any claim against it.

[13] With reference to the claim that the right of action, if any, is in the insurance carrier of the plaintiff, it is sufficient to say that there is no evidence that the insurance carrier has paid the compensation or served notice upon the widow that it accepted the responsibility. Under these circumstances the employer, having paid the widow the compensation provided by law, is entitled to maintain the suit. (Secs. 34e, 34f.) The provisions of section 30, subdivision 2, cited in support of the contention, only apply where there is a general contractor and an intermediate contractor, and have been held unconstitutional. (*Perry* v. *Industrial Acc. Com.*, 180 Cal. 497, [181 Pac. 788].)

[14] The court instructed the jury that the contributory negligence, if any, of the deceased, was not a defense in the action. This instruction was evidently based upon the fact that contributory negligence was not pleaded as a defense. The answer alleged that the injury was wholly the result of the negligence of the deceased, which amounted to nothing more than a denial of negligence on the part of the defendant. The instruction was fully justified under the pleadings. (*Crabbe* v. *Mammoth Channel M. Co.*, 168 Cal. 500, [143 Pac. 714].) Of course, if the case had been tried upon the theory that contributory negligence was involved and the jury had been so instructed, this court would not upon appeal hold that the issue of contributory negligence was not involved. (*Hughes* v. *Warman Steel Casting Co.*, 174 Cal. 562, [163 Pac. 885]; *Schuh* v. *R. H. Herron Co.*, 177 Cal. 13, 18, [169 Pac. 682]; *Busch* v. *Los Angeles Ry. Corp.*, 178 Cal. 536, [2 A. L. R. 1607, 174 Pac. 665].) In this case, however, the court instructed the jury that con-

tributory negligence was not an issue. It could only have been made such by an amendment of the pleadings.

[15] Defendant complains of the instruction with reference to the measure of damages, contending that the jury was thereby authorized to return a verdict for some amount in addition to the pecuniary loss suffered by the family of the deceased. The instructions on this subject begin with the following statement: "If under the evidence and instructions of the court, the jury find for the plaintiff, then in assessing the damages which plaintiff is entitled to recover, the jury should assess the same with reference to the pecuniary loss sustained by the widow and children of the deceased." Then follows an enumeration of the elements which are to be considered by the jury in arriving at the pecuniary loss. The clause particularly objected to, as allowing something in addition to the pecuniary loss, is the following: "And if you find for the plaintiff, in determining the amount of damages to the children, you have and are to consider the value of the nurture and instruction, moral and physical, and intellectual training, if any, which the father gives to the children, and in determining such value, you are not limited to a case of similar service rendered by a hired servant, but may take into consideration the value of such service when rendered by the father to his children, having regard to the evidence in this case, if there be any, as to the ability and willingness of the deceased to nurture, care for, train, and educate his children." Construing together the instructions as to the measure of damages, the clause complained of merely calls the attention of the jury to an additional element to be considered in arriving at the pecuniary loss suffered by the widow and children. If the defendant believed that a more pointed and emphatic instruction limiting the liability to the pecuniary loss was necessary, it should have requested such instruction.

Judgment affirmed.

Lennon, J., Olney, J., Shaw, J., Lawlor, J., and Angellotti, C. J., concurred.