[L. A. No. 6593. In Bank.—August 29, 1921.]

CLINTON E. B. WILLIAMS, Respondent, v. FRANK P. SEIGLITZ, Appellant.

[1] SLANDER—PLEADING.—In an action for slander, where the words are of such a character as to contain a covert slander, their meaning must be alleged and proved, but where the words are actionable *per se*, an allegation that they were spoken of and concerning the plaintiff is sufficient.

[2] ID.—STATEMENT AFFECTING BUSINESS INTEGRITY—ACTIONABLE PER SE.—A statement that one engaged in the jewelry business was a

crook and that he got away with a diamond ring entrusted to him is actionable *per se,* as calculated to injuriously affect him in his business.

[3] EVIDENCE — ABANDONED PLEADING — IMPEACHMENT. — While an abandoned pleading may not be used as evidence against the pleader, it may be admitted for purposes of impeachment of the pleader's testimony by showing prior inconsistent statements.

APPEAL from a judgment of the Superior Court of Imperial County. Phil D. Swing, Judge. Affirmed.

The facts are stated in the opinion of the court.

Chas. L. Childers for Appellant.

Ault & Anderson and Hickcox, Crenshaw & Trude for Respondent.

LAWLOR, J.—This is an appeal by the defendant from a judgment in favor of the plaintiff for damages in the sum of one thousand dollars and costs in an action for slander.

Appellant and respondent were both engaged in the jewelry business in Calexico, Imperial County. Respondent's business was called the "Williams Jewelry Company," and respondent employed his brother, George Williams, in the capacity of manager. Respondent and appellant were advertisers in the "Semi-Weekly Plain Dealer," a newspaper published in Calexico, and with which one Frank W. Roach was connected. Upon an occasion in the month of December, 1918, appellant called at the office of the "Plain Dealer" for the purpose of discontinuing his advertising in and his subscription to the paper. He had a conversation with Mr. Roach at that time in which he assigned as the reason for his action that he did not care to support anyone who was supporting his competitors, the Williams Brothers. It was during this conversation that the alleged slanderous statements were made. The alleged slander consisted in appellant having said, speaking of and concerning respondent and his brother, that "they are not men who are entitled to support; they are crooks," that they "were run out of a place in Arizona," that "the people [meaning the people of Calexico] will find it out," that "somebody left a diamond with the Williams brothers in Arizona, and

they got away with it,'' that ''some persons are going after them legally on some crooked deals they were mixed up in before they came to Calexico,'' and that ''they cannot get goods through wholesale houses.''

Appellant relies upon two points for reversal—the denial of his motion for nonsuit, and the admission in evidence of his original answer over his objection.

1. The first point is thus stated in appellant's brief: ''Section 46 of the Civil Code carefully defines what a slander is. There is nothing anywhere in the plaintiff's complaint which on its face charges or tends to charge a crime, or that the plaintiff had been indicted, convicted or punished for crime, and there is no explanation anywhere of any of the alleged statements which explains in any way what any of these statements mean, or were supposed to have meant or was understood to have meant, but the statements are left standing entirely alone and unsupported. There is no allegation that any of the alleged statements tends directly to injure the plaintiff in respect to his office, profession, trade, or business, either by imputing to him general disqualifications in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits. Since there is no allegation on this point, of course, an attempt to prove it would be erroneous, but the plaintiff did not even attempt to make the proof. . . . There is not the slightest bit of evidence that any actual damage was caused by these or any other remarks, so we find nothing in any of the evidence that brings any of the alleged statements within the meaning of section 46 of the Civil Code, and, therefore, on that ground alone, the defendant's motion for nonsuit should have been granted.''

Respondent claims that the language used was actionable *per se* as imputing to him a crime and as tending to injure him in respect to his trade and business; as imputing to him a want of integrity, a qualification which his occupation, trade, and business peculiarly required; and that, therefore, it was not necessary minutely and in detail to show what appellant meant by the language used, how he meant it to be understood, or how it was understood. However, he contends further that even if the words are not

actionable *per se,* their meaning is set forth in the complaint, and that evidence was introduced to show that they were used and understood in an actionable sense.

The following testimony of Mr. Roach as to his conversation with appellant will be sufficient for our purposes: "Why, he canceled his arrangement for advertising and his subscription to the paper, and I asked him why, and he said that he didn't care to support anyone who was supporting or helping those—his competitors, I don't know just how he referred to them—but his competitors in the jewelry business, and I said that seemed to be a foolish view to take of it, I said in a newspaper competitors in all lines advertised, and were supposed to, and he had to expect competitors in his business in Calexico some time, and he said he didn't object to competitors, he would welcome competition of the right kind, but he did object to competition, he said that those people were not worthy of support of the people at that time, and they were not the kind of competitors that he liked, or words to that effect, and I said that I had found the Williams boys, in my dealings with them, to be fair and straight, honest and all that, and he said I didn't know them, that when the people of the town did know them as well as he knew them they would be run out, or something of that kind, that they wouldn't be supported, and that they had been run out of some place in some other state, I believe he said Arizona, where they had done business, in fact he knew them to be crooked he said. And I think that was about the extent of the conversation, he canceled his contract and canceled his business with me. . . . He stated that he had knowledge or knew something about a diamond ring—he mentioned its value, it seems to me; I am pretty certain it was about a thousand dollars—had been left with the Williams boys in Arizona some place for remounting or cleaning or something of that kind, and had disappeared while in their possession. Q. Was anything said at that time that they were guilty of embezzlement, or taking the property? A. Yes, sir, he intimated that they know what became of it. . . . His words were that they had got away with it." On cross-examination, he testified: "He said a diamond ring had been left with them, I don't remember for what purpose he said, to be repaired, or reset or to be cleaned, and it disappeared and they had

gotten away with it." On redirect examination, he stated: "Q. I will ask you, Mr. Roach, whether or not the term 'crook' was used in the conversation? A. Yes, sir, it was. Q. And directed to the Williams boys? A. Using the personal pronoun, yes, sir, without expressing either one; just 'them' or 'they.' Q. You understood him to mean the Williams boys, the jewelers? A. Yes, sir. Q. And Clinton E. B. Williams, and George Williams? A. Yes, sir."

Section 46 of the Civil Code defines slander as a false and unprivileged publication other than libel, which: "1. Charges any person with crime . . . 3. Tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; . . . 5. Which, by natural consequence, causes actual damage."

[1] Where the words used are of such a character as to contain a covert slander, their meaning must be alleged and proved. (*Edwards* v. *San Jose Pub. Soc.,* 99 Cal. 431, [37 Am. St. Rep. 70, 34 Pac. 128]; *Schomberg* v. *Walker,* 132 Cal. 224, [64 Pac. 290].) But where the words are actionable *per se* an allegation that they were spoken of and concerning the plaintiff is sufficient. (Code Civ. Proc., sec. 460; *Jarman* v. *Rea,* 137 Cal. 339, [70 Pac. 216].)

In *Beek* v. *Nelson,* 126 Minn. 10, [147 N. W. 668], the plaintiff was a secretary and executive officer of an association. The slanderous expressions were that he was a paid hireling of a combine, that he had never done a decent or respectable thing for his city, and that he was employed to do the dirty work of a jobbers' union. In reversing the judgment of the court below, where it was held that the words were not actionable *per se,* it was said: "By the great weight of authority, spoken words directly disparaging a person in his employment or calling are held to be actionable *per se,* even though they do not charge a crime. [Citing numerous authorities] . . . The rule is applicable to a person engaged in any lawful occupation or employment by which he gains his livelihood. (*Johnson* v. *Shields,* 25 N. J. L. 116.) The reason of the rule is that, when an employment is lucrative, words which reflect upon the integ-

rity or the capacity of the employee render his tenure precarious, and are, therefore, a detriment in a pecuniary point of view. (*Gove* v. *Blethen,* 21 Minn. 80, [18 Am. Rep. 380].)''

In *Noeninger* v. *Vogt,* 88 Mo. 589, the defendant, referring to plaintiff in his business of merchant and miller, said in part: ''You are a defrauder; all that you have you accumulated by defrauding.'' The court, holding these words to be actionable *per se,* said: ''Any charge of dishonesty against an individual in connection with his business, whereby his character in such business may be injuriously affected, is actionable. . . . Language which imputes to one fraud, or want of integrity in his business, is actionable *per se,* and hence special damages need not be alleged.''

[2] In our opinion respondent's contention that the words are actionable *per se* must be sustained. While it may be true, as appellant asserts, that honesty is a requisite in any business, still that quality, within the meaning of the statute, is peculiarly required of a bailee such as a jeweler to whom jewelry is entrusted in the course of his business. The statements that respondent in his business as a jeweler was a ''crook,'' and that he ''got away'' with a diamond ring which had been entrusted to him in another state, palpably imputed to him a want of the quality of keeping safe and returning the articles entrusted to him. In addition to being an imputation of a want of integrity in his trade, such an accusation would naturally tend to lessen the profits of his jewelry business, for, as respondent says, ''If a general impression were established among the good people of Calexico that plaintiff had gotten away with a thousand dollar diamond ring left with him as bailee, how many diamond rings would thereafter be entrusted to his care?''

Appellant relies on the following authorities in support of his contention that where the meaning of the words is ambiguous it must be set out and proved: *Hearne* v. *De Young,* 119 Cal. 670, [52 Pac. 150, 499]; *Edwards* v. *San Jose Pub. Soc.,* 99 Cal. 431, [37 Am. St. Rep. 70, 34 Pac. 128]; *Maynard* v. *Fireman's Fund Ins. Co.,* 34 Cal. 48, [91 Am. Dec. 672]; *People* v. *Isaacs,* 1 N. Y. Crim. Rep. 148; *Bloss* v. *Tobey,* 2 Pick. (Mass.) 320; *People* v. *Collins,* 102 Cal. 345, [36 Pac. 669]. It will be found by an examination of these authorities that the law as to the allegation

and proof of ambiguous terms in actions of libel or slander is
as we have stated it to be.    Appellant insists that the words
used in this case are no stronger than those used in other
cases where the language has been held not actionable *per se*
These cases are *Clarke* v. *Fitch,* 41 Cal. 472; *Nidever* v. *Hall,*
67 Cal. 79, [7 Pac. 136]; *De Witt* v. *Wright,* 57 Cal. 576;
*Frolich* v. *McKiernan,* 84 Cal. 177, [24 Pac. 114]; *Mellen* v.
*Times-Mirror Co.,* 167 Cal. 587, [Ann. Cas. 1915C, 766,
140 Pac. 277]; *Rea* v. *Wood,* 105 Cal. 314, [38 Pac. 899].
While it is true the words alleged in several of these cases
were held not to be actionable *per se,* those decisions were put
upon the ground that it was not properly alleged that they
applied to the plaintiff, as, for instance, in *De Witt* v.
*Wright, supra,* or *People* v. *Isaacs, supra;* in *Mellen* v.
*Times-Mirror Co., supra,* where the words purported to im-
pute a crime, it was held the language was insufficient;
where the words purported to affect the plaintiff in a public
office, as was the case in *Rea* v. *Wood, supra,* or his business,
as in the case of *Maynard* v. *Fireman's Fund Ins. Co.,*
*supra,* the language complained of was not calculated pe-
culiarly to affect the plaintiff in such office or business.    In
the case at bar the language was plain and unequivocal,
clearly applying to respondent, and, as we have shown, cal-
culated to injuriously affect him in his business.

Since the words were actionable *per se,* it will not be
necessary to consider appellant's contention that the allega-
tions of the complaint are insufficient as to the meaning of
the language used, or respondent's contention that the
words impute a crime and are also actionable *per se* within
the meaning of subdivision 1 as well as subdivision 3 of
section 46.

The foregoing testimony of Mr. Roach amply supports
the allegations of the complaint that the alleged statements
were made, and we have shown they were slanderous *per se.*
The motion for nonsuit was, therefore, properly denied.

[3]  2. In support of his contention that the original an-
swer was improperly admitted as a part of his cross-examina-
tion, appellant cites *Morris* v. *Lachman,* 68 Cal. 109, [8 Pac.
799]; *Stern* v. *Loewenthal,* 77 Cal. 340, [19 Pac. 579];
*Mecham* v. *McKay,* 37 Cal. 154; *Ponce* v. *McElvy,* 51 Cal.
222.    These authorities lay down the rule that in this state
an abandoned pleading may not be used as evidence against

the pleader. However, it has been held that such a pleading may be admitted for purposes of impeachment of the pleader's testimony by showing prior inconsistent statements. (*Estate of O'Connor,* 118 Cal. 69, [50 Pac. 4]; *Schuh* v. *Herron Co.,* 177 Cal. 13, 17, [169 Pac. 682]; *Johnson* v. *Powers,* 65 Cal. 179, [3 Pac. 625].) On his direct examination appellant testified that he "knew absolutely nothing about respondent that he could have discussed his character at any time." In the original verified answer he alleged in effect that the statements attributed to him concerning respondent were each and all of them true. In the amended answer the allegation was modified to include only the statements that "some persons are going after them legally on some crooked deals they were mixed up in before they came to Calexico" and "they cannot get goods through wholesale houses." Notwithstanding appellant's claim to the contrary, we think it clear from the record that the original answer was admitted for purposes of impeachment, although there is no direct statement to that effect. It appears that appellant was given an opportunity to explain the inconsistency, and did offer an explanation. The pleading was properly admitted.

Judgment affirmed.

Shaw, J., Sloane, J., Shurtleff, J., Lennon, J., Wilbur, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred, except Shaw, J., who was absent.