[Civ. No. 55493. Second Dist., Div. Four. Oct. 18, 1979.]

EUGENE J. ALBERTINI et al., Plaintiffs and Appellants, v.
ROBERT J. SCHAEFER et al., Defendants and Respondents.

COUNSEL

Eugene J. Albertini, in pro. per., and Albertini & Gill for Plaintiffs and Appellants.

McKenna & Fitting, Aaron M. Peck, I. Bruce Speiser and Edmond M. Connor for Defendants and Respondents.

## Opinion

**JEFFERSON (Bernard), J.**—Plaintiffs Eugene J. Albertini and Chronometrics, Inc., a California corporation, filed a complaint seeking damages for slander, trade libel and interference with business relationship. Named as defendants were Robert J. Schaefer and Sysgen, Inc., a California corporation. Defendants sought and obtained a summary judgment in their favor. Plaintiffs have appealed from this judgment.

Plaintiff Albertini is a lawyer and president of Chronometrics, a corporation providing computer programming for lawyers. Defendant Robert J. Schaefer (apparently a former employee of Chronometrics) is the president of Sysgen, Inc., also a corporation involved in applying computerization to the practice of law. Another principal in this matter, although not a party to the litigation, is James Q. DeWitt, president of Lex Systems, Inc., a corporation located in San Francisco and concerned with the same subject, namely, computer services for lawyers.

I

*The Complaint*

The complaint was framed in six causes of action; all were derived from the same basic operational facts alleged in each cause of action. Plaintiffs alleged that, on or about December 1, 1976, defendant Schaefer stated in the presence of James Q. DeWitt, Richard Stewart and others that plaintiff Albertini was a "crook" and a "thief" and declared that plaintiff Chronometrics, Inc. was a "scam" corporation, thereby accusing plaintiff corporation of being and committing a fraud upon its creditors and the public in general.[1] It is further alleged that Schaefer made other derogatory remarks, unspecified.

In addition to four causes of action in slander, the complaint alleged the commission by defendants of trade libel, i.e., disparagement of such Chronometrics products as electronic time recorders and computer programs and, also, what appears to be the tort of intentional interference with prospective economic advantage, i.e., disruption of a developing business relationship between plaintiffs and DeWitt's Lex Systems, Inc. Compensatory damages of $100,000 and punitive damages of $1 million were requested for each plaintiff.

---

[1]According to Wentworth, Dictionary of American Slang (2d supp. ed., 1975) page 702, "scam" means "swindle, especially a dishonest carnival concession or game of chance."

Defendant's motion for summary judgment was predicated on the following grounds: (1) that the allegations of plaintiffs' complaint were sham and frivolous; and (2) that there existed no triable issue of fact on any of the six causes of action.

## II

### *The Content of the Declarations Submitted*
### *in Support of and in Opposition to*
### *the Summary Judgment Motion*

The motion for summary judgment was supported by three declarations, those of defendant Schaefer and of DeWitt and Stewart, denying that defendant Schaefer, with whom DeWitt and Stewart had met on December 1, 1976, had, in their presence, called plaintiff Albertini a "crook" or a "thief," or called Chronometrics a "scam" corporation. DeWitt and Stewart also denied that any equivalent or similar language had been employed by Schaefer or that the declarants had heard any statements they understood to be derogatory to plaintiffs. In addition, the DeWitt declaration, dated March 30, 1978, stated that DeWitt's relationship to plaintiffs was based on mutual interest in the computer field and only that; the parties were not negotiating any business deals.

In opposition to the motion for summary judgment, plaintiffs filed a declaration, dated April 17, 1978, and executed by the same James Q. DeWitt, who executed the March 30, 1978, declaration in support of defendants' summary judgment motion. In it DeWitt explained that he had executed the first declaration pursuant to his understanding with defendants' attorneys that he was only being asked to deny Schaefer's use in his presence of the specific words "crook," "thief," or "scam"—the specific words set forth in the complaint; that he did not recall such use; that on this narrow ground he had executed the first declaration. However, DeWitt went on to state, in his April 17 declaration, that "at the time Mr. Stewart and myself left the meeting with Mr. Schaefer, we had the impression from that meeting that Mr. Albertini was a dishonest or unethical lawyer and that Chronometrics, Inc. was merely a 'front' for Mr. Albertini or his alter ego."

In addition, DeWitt's April 17 declaration made reference to a paragraph 10 of his March 30 declaration. DeWitt declared that this paragraph troubled him because it appeared to be contrary to his

828

understanding that, when they left the Schaefer meeting, they "were under the distinct impression *as created by Mr. Schaefer*, that Mr. Albertini was dishonest and unethical and that the corporation called Chronometrics, Inc. was a front or alter ego for Mr. Albertini." (Italics added.) The paragraph 10 of the DeWitt March 30 declaration referred to in DeWitt's April 17 declaration, stated: "At no time during the meeting did Mr. Schaefer make any statements regarding Mr. Albertini, Chronometrics, or any other person or entity, or the business goods or products thereof, that I understood to have any defamatory or disparaging meaning."

The DeWitt declaration of April 17 was the only declaration filed by plaintiffs in opposition to defendants' motion for summary judgment.

III

*The Irrelevancy of Declarations Submitted
in Support of and in Opposition to
the New Trial Motion*

As indicated, the trial court awarded summary judgment to defendants. Our record includes a minute order which purports to recite, in terms not too clearly defined, the trial court's reasoning in reaching its determination. Whatever that reasoning was, our task is to determine whether the ruling was correct. ■ That determination must be made on the state of the record as it existed at the time the trial court decided the matter and granted a summary judgment in defendants' favor.

We stress this point, because our record includes several additional declarations made in support of a motion for new trial made by plaintiffs. In one such declaration, plaintiff Albertini identifies DeWitt as the source of his information concerning the alleged slander, conveyed by DeWitt to Albertini through one Deno Benedetti, an employee of Chronometrics; no declaration of Benedetti had been filed. Another declaration, the *third* executed by DeWitt, purported to explain the circumstances of his executing the second declaration, complaining that the statements expressed therein were "phrased differently" than those he had actually made (to plaintiffs' lawyers) and that the only impression he had carried from the December 1976 meeting was that "[Schaefer] did not especially like the [plaintiff]."

The parties in their brief have made reference to these additional declarations to support their respective positions. But since the only matter before us is an appeal from the summary judgment, the declarations submitted on plaintiffs' motion for new trial have no relevance and cannot be considered by us in determining the validity of the trial court's action in granting summary judgment to defendants.

The trial court treated plaintiffs' motion for new trial as a proceeding to set aside the judgment pursuant to Code of Civil Procedure section 473, and denied the motion.

## IV

### *Words Constituting Slander Per Se*

Slander is described in Civil Code section 46, in pertinent part for our purposes, as "a false and unprivileged publication, orally uttered, . . . which: . . . [¶] Tends directly to injure [a person] in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits; . . . or [¶] Which, by natural consequence, causes actual damage."

■ Words which fall within the purview of Civil Code section 46 are deemed to constitute slander per se (*Douglas* v. *Janis* (1974) 43 Cal.App.3d 931 [118 Cal.Rptr. 280]; *Contento* v. *Mitchell* (1972) 28 Cal.App.3d 356 [104 Cal.Rptr. 591]) with the effect that the utterance of such words is actionable without proof of special damage. (*Correia* v. *Santos* (1961) 191 Cal.App.2d 844 [13 Cal.Rptr. 132].)

Calling someone a "thief" was early held to be defamatory per se (see e.g., *Rhodes* v. *Naglee* (1885) 66 Cal. 677 [6 P. 863]; *Smullen* v. *Phillips* (1891) 92 Cal. 408 [28 P. 442]; *Harris* v. *Zanone* (1892) 93 Cal. 59 [28 P. 845]). ■ A fair construction of Civil Code section 46 requires a holding that calling an attorney a "crook" is equally actionable as slander per se without proof of special damage. Imputing dishonesty or lack of ethics to an attorney is also actionable under Civil Code section 46 because of the probability of damage to professional reputation. (*Katz* v.

*Rosen* (1975) 48 Cal.App.3d 1032 [121 Cal.Rptr. 853].) (See, also, *Hanley* v. *Lund* [a doctor] (1963) 218 Cal.App.2d 633 [32 Cal.Rptr. 733].)

■ Corporate reputation is also protected by Civil Code section 46; corporations may sue or be sued for defamation. (*Di Giorgio Fruit Corp.* v. *AFL-CIO* (1963) 215 Cal.App.2d 560 [30 Cal.Rptr. 350].)

V

*The Effect in a Slander Case of Some*
*Variance Between Words Allegedly Spoken*
*and Those Proved to Have Been Spoken*

■ In the case at bench the declarations supporting the motion for summary judgment tended to indicate that defendant Schaefer did not use the identical words alleged in the complaint to constitute slander per se. Is proof of the identical words necessary for plaintiff to sustain his cause of action? In the early case of *Haub* v. *Friermuth,* 1 Cal.App. 556, 557-558 [82 P. 571], decided in 1905, the court observed: "The rule is of long standing that to authorize a recovery in such action the plaintiff must prove the utterance of the words set forth in his complaint, or enough of them to show that the defendant charged him with the particular offense constituting the slander. He is not required to reproduce with literal precision the identical words set forth in his complaint, but those which are proved to have been spoken must be in substance the same or have substantially the same meaning. . . ." (See also 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 599, p. 2238.) No authority has been called to our attention which disagrees with the statement made by the *Haub* court and set forth herein. We shall consider subsequently whether the situation presented in the case at bench comes within the rule of law announced in *Haub.*

VI

*Synopsis of Principles of Summary*
*Judgment Proceedings*

We turn next to a consideration of the legal principles involved in summary judgment proceedings. ■ ■ The purpose of summary judgment proceedings is well established and requires no lengthy exposition. In essence, it seeks to determine whether a case must be tried. A case must be tried if there exist triable issues of fact. If no triable issues of fact exist, summary judgment becomes the result. (Code Civ. Proc.,

§ 437c; *Chern v. Bank of America* (1976) 15 Cal.3d 866, 873 [127 Cal.Rptr. 110, 544 P.2d 1310].)

■ Ordinarily the trial judge makes the requisite determination by examining affidavits (or declarations executed under penalty of perjury) supporting the motion for summary judgment. If these affidavits do not offer complete support for the motion, it must be denied; if they do, the trial judge must then scrutinize the counteraffidavits for evidence demonstrating triable issues of fact. (See *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117, 127 [109 Cal.Rptr. 724].) It long has been the rule that "the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) ■ And, conflicts in affidavits are to be resolved in favor of the nonmoving party. (*Chesney* v. *Gresham* (1976) 64 Cal.App.3d 120, 125 [134 Cal.Rptr. 238].)

In the case at bench, plaintiff Albertini was not present at the meeting where the alleged slander occurred. It was incumbent upon him to plead (1) a sufficiently precise description of the slanderous utterance relied upon and (2) publication, i.e., communication to some third person. The first DeWitt declaration and the Stewart declaration, filed by the defendants, constituted a denial that the alleged slander had been uttered or published.

"Only if the declarations of the moving defendant considered in light of the issues raised by the pleadings together with the admissions and affirmative allegations set forth in the pleadings of the plaintiff would, standing alone support the summary judgment motion does the court look to any counteraffidavits and counterdeclarations." (*Residents of Beverly Glen, supra,* 34 Cal.App.3d 117, 127.) The problem confronting plaintiffs at this point in the litigation was explained in *Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670], as follows: "If the defendants' declarations in support of a motion for summary judgment establish a complete defense to plaintiffs' action or *demonstrate an absence of an essential element of plaintiffs' case,* and the plaintiff's declaration in reply does not show that a triable issue of fact with respect to that defense or that essential element exists, no amount of factual conflicts upon other aspects of the case will affect the result and the motion for summary judgment should be granted." (Italics added.)

## VII

*Insufficiency of the Declarations to Support
a Conclusion That No Triable Issue of Fact
Existed With Respect to Whether Defendants
Uttered the Words of Slander as Alleged in
Plaintiffs' Complaint*

In their declarations, filed in support of defendants' motion for summary judgment, DeWitt and Stewart denied that the specifically pleaded words of slander had been uttered by Schaefer. At this point, the situation was not unlike that found in *Swope* v. *Moskovitz* (1967) 253 Cal.App.2d 514 [61 Cal.Rptr. 277]. In *Swope,* defendants presented affidavits constituting a complete denial of utterance and publication of alleged slanderous words. In affirming the summary judgment granted defendants by the trial judge, the *Swope* court stated: "To put it baldly, plaintiff relies only upon his hope that witnesses who have testified against him by affidavit will, in open court, reverse themselves and give testimony in support of plaintiff's claim. In order to defeat the motion [for summary judgment], a party must present something more substantial than that. . . . [A] trial to examine the credibility of defendants' witnesses will not help plaintiff. Here plaintiff has the burden of proving that the alleged slander was uttered. The record shows that he has no evidence." (*Swope, supra,* 253 Cal.App.2d 514, 517-518.)

We consider next the impact of the second DeWitt declaration, filed by plaintiffs in opposition to defendants' motion for summary judgment. In it, DeWitt denied that Schaefer had used the words "crook," "thief" or "scam" in discussing the plaintiffs, but declared that he had come away from the meeting with the "impression," derived from defendant Schaefer, that plaintiff Albertini was a dishonest and unethical attorney, and using Chronometrics as a "front." This second declaration by DeWitt raises several different problems of pleading, proof and summary judgment practice.

It is obvious that a plaintiff, attempting to plead and prove an alleged slander which occurred when he was not present, has a far more difficult task than when the defamation alleged is written, where it may be seen. As we have previously pointed out, there is no requirement that, in slander, the pleading and proof must be *identical* in order for a plaintiff to recover. Certainly, the disparagement set forth in the complaint must be

sufficiently close to the actual words proved to acquaint a defendant with what he must defend against. (*Haub, supra,* 1 Cal.App. 556.)

We take note of the fact that *Haub* was decided in 1905, long before California adopted the now generally accepted view that amendments to pleading should ordinarily be permitted to relate back to the filing of the original complaint, so long as the subject matter was derived from the same general set of facts. (See, e.g., *Austin* v. *Massachusetts Bonding & Insurance Co.* (1961) 56 Cal.2d 596 [15 Cal.Rptr. 817, 364 P.2d 681], and its progeny.)

Defendants contend that the declarations filed in support of their motion for summary judgment establish that there is no triable issue of fact in the instant action because the denials of the utterance by defendant Schaefer of the *exact* slanderous words alleged in plaintiffs' complaint are not modified or vitiated by DeWitt's second declaration, offered in support of plaintiffs' opposition to the motion. It is defendants' view that DeWitt's second declaration must be construed as no more than a statement that *possibly* defendant Schaefer used defamatory words other than those alleged in the complaint—a statement which seeks to create triable issues outside of the issues framed by plaintiffs' complaint. For this view, defendants rely upon cases such as *Keniston* v. *American Nat. Ins. Co.* (1973) 31 Cal.App.3d 803 [107 Cal.Rptr. 583]; *IT Corp.* v. *Superior Court* (1978) 83 Cal.App.3d 443 [147 Cal.Rptr. 828]; *Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376 [121 Cal.Rptr. 768]; and *Orange County Air Pollution Control Dist.* v. *Superior Court* (1972) 27 Cal.App.3d 109 [103 Cal.Rptr. 410].)

But none of these cases is persuasive in light of the factual and legal situation presented by the case before us. These cases hold generally that counterdeclarations filed in response to a defendant's motion for summary judgment (1) may not create issues outside the pleadings, and (2) cannot be a substitute for an amendment which raises entirely different issues than those presented in the complaint.

These principles have no application to the situation presented in the case before us. One significant difference is that DeWitt's second declaration casts a factual doubt on the credibility of DeWitt's first declaration offered by defendants in support of the summary judgment motion. In his second declaration, DeWitt states that he *"did not recall"* that, during the meeting at issue, defendant Schaefer called plaintiff Albertini a "crook" or a "thief," or that plaintiff Chronometrics corpora-

tion was a "scam." DeWitt repeated this language in his second declaration that he "did not recall, in fact," that those specific words were used by defendant Schaefer towards defendants Albertini or Chronometrics. This lack-of-recall language may be interpreted as being inconsistent with DeWitt's first declaration in which he asserts categorically that "[a]t no time during the meeting [in issue] did Mr. Schaefer state that" plaintiff Albertini "was, or is," a "crook," "thief," or that plaintiff Chronometrics "was, or is, a 'scam' corporation or entity."

The failure-to-recall language, used by DeWitt in his second declaration, modifies DeWitt's outright denial, set forth in his first declaration, of having heard defendant Schaefer utter the words of slander alleged in the complaint, to the extent that the first declaration can no longer be considered as proof that no such words were uttered; they may have been uttered and DeWitt may have a recollection at a trial whereas he set forth a lack of recollection on the date as set forth in his second declaration. Thus, defendants' declarations, considered along with DeWitt's second declaration, submitted by plaintiffs, cannot be construed as offering complete support for a determination that there exists no triable issue with respect to whether defendant Schaefer uttered the words as alleged in plaintiffs' complaint.

■ A second difference is that, in the second declaration, DeWitt states that, although he did not recall defendant Schaefer using the specific words—crook, thief or scam—he left the meeting with defendant Schaefer "under the distinct impression *as created by Mr. Schaefer,* that Mr. Albertini was dishonest and unethical and that the corporation called Chronometrics, Inc. was a front or *alter ego* for Mr. Albertini." Defendants argue that DeWitt's second declaration was insufficient to establish that defendant Schaefer uttered the words about plaintiff Albertini being *dishonest* and *unethical* or that plaintiff corporation was a *"front"* for Albertini or his alter ego because of the use by DeWitt of the phrase that he had the "distinct impression" that these words were used. We recognize that DeWitt does not state, with specificity, that he heard defendant Schaefer utter these words. But we think a reasonable interpretation of the words "distinct impression" is that DeWitt was stating that it was his best recollection that defendant Schaefer had spoken the words "dishonest," "unethical," a "front" and "alter ego" with respect to plaintiffs.

We conclude, therefore, that the words that plaintiff Albertini, an attorney, "was dishonest and unethical" have substantially the same

meaning as the words alleged in the complaint—a crook or thief—and that the words "Chronometrics, Inc. was a front or alter ego for Mr. Albertini" have substantially the same meaning as the words alleged in the complaint—a "scam corporation or entity"—to come within the principle of *Haub* that a plaintiff in a slander action "is not required to reproduce with literal precision the identical words set forth in his complaint, but those which are proved to have been spoken must be in substance the same or have substantially the same meaning. . . ." (*Haub, supra,* 1 Cal.App. 556, 557-558.)

Furthermore, in view of the substantial similarity between the words which DeWitt, in his second declaration, states he heard, and the words alleged in the complaint, the rule of law becomes applicable that "on a motion for summary judgment, considerable liberality should be used by the trial court in allowing amendments which do not completely and entirely depart from the general area of the cause set up in the pleadings." (*Residents of Beverly Glen, supra,* 34 Cal.App.3d 117, 128.)

Even if we were to conclude that the words spoken by defendant Schaefer as set forth in the second declaration of DeWitt, presented by plaintiff, were not in substance the same as the words alleged in plaintiffs' complaint, we would be required, nevertheless, to reach the result that defendants' motion for summary judgment should not have been granted.

█ As we have pointed out, DeWitt's second declaration precludes any finding that defendants established that there were no triable issues presented by the complaint. In view of the inconsistency between DeWitt's first and his second declaration, it cannot be concluded that defendants have made a showing that defendant Schaefer did *not,* at the meeting in question, use the words "thief" or "crook" with respect to plaintiff Albertini, or use the words a "scam" corporation with respect to the plaintiff Chronometrics corporation, so as to establish that there are no triable issues to be determined in a trial on the merits.

We fully recognize that a defendant is entitled to a summary judgment if a showing is made that there is no triable issue of fact, which necessitates a conclusion that the action has no merit. But we also agree with the principle that "on appeal from a summary judgment in favor of defendants we need only determine whether there is a possibility that plaintiff may be able to establish its case. [Citation.] When the moving party is the defendant the latter must conclusively negate a necessary element of the plaintiff's case and demonstrate that under no hypothesis

is there a material factual issue which requires the process of a trial." (*Frazier, Dame, Doherty, etc., supra,* 70 Cal.App.3d 331, 339.) Under the circumstances presented, it was error for the trial court to grant defendants' motion for summary judgment.

The judgment is reversed.

Files, P. J., and Swearinger, J.,* concurred.

On November 8, 1979, the opinion was modified to read as printed above.

---

*Assigned by the Chairperson of the Judicial Council.